Pro Se

# UNITED STATES COURT OF APPEALS

for the First Circuit

Appeal Case No. 26-1770

Kyrpych et al,

*Plaintiff-Appellant*

v.

Kelly et al,

*Defendants-Appellees*

On Appeal from the United States District Court for the District of Massachusetts, Case No: 1:25-cv-12291-FDS

PLAINTIFF-APPELLANT'S

EMERGENCY MOTION TO EXPEDITE APPEAL

DUE TO IMMEDIATE CHILD SAFETY AND

LONG-TERM DEPRIVATION OF PARENTAL RIGHTS

Pursuant to Federal Rule of Appellate Procedure 27, Plaintiff-Appellant Yaroslav Kyrpych, proceeding *pro se*, respectfully moves this Court to expedite the briefing and disposition of this appeal. In support of this motion, Appellant states as follows:

I.    REASONS FOR EXPEDITION: CRITICAL URGENCY AND IRREPARABLE HARM

This appeal demands expedited review due to severe, ongoing personal urgency concerning an active child safety matter and the ongoing, profound deprivation of Appellant's parental rights.

This appeal demands immediate, expedited review because it involves an active, acute crisis concerning the safety and psychological well-being of minor children of Plaintiff-Appellant, alongside a profound and ongoing deprivation of Appellant's parental rights. Every day that passes under the standard appellate timeline compounds the following severe, irreparable harms:

- **Active and Documented Psychological Priming of Minor Children**:

  The minor children are being subjected to systemic emotional and psychiatric coercion designed to induce false statements regarding sexual abuse. This includes documented psychological priming carried out by state (Defendant-Appellees from Norfolk County District Attorney's Office ADAs Christine Cullinan and Anne Yas, Defendant-Appellee Rachael Sullivan) and private actors (non-party co-conspirator Donna Madoff). Clinical consultants from the Department of Children and Families (DCF)—specifically Norah Hass, Psy.D., and Paula Stahl, LMHC, from Key Program Inc.—explicitly warned (DCF 51B report dated June 22, 2023, Dkt 140, Ex. 140, p. 15) that the **"children are being bathed in narratives focused on sexual abuse which could have a profound impact on their functioning, world view and psychological safety."** They further raised critical questions regarding the **"positive reinforcement of disclosures being made"** and stated that **"family therapy is indicated at this time rather than individual trauma therapy."** Despite these urgent professional directives to halt this priming, state and private actors continued the practice. The severe emotional distress of this environment has manifested in documented physical symptoms, including chronic stress-induced ailments affecting both children.

- **Fabrication of Psychiatric History, Forced Medicalization, and Retaliatory Institutionalization:**

  As detailed in Appellant's Third Amended Complaint (4/20/2026, Dkt 135), the private and institutional Appellees engaged in an active conspiracy to fabricate a fraudulent psychiatric history for the older minor child as a direct retaliatory strike within 24 hours of Appellant serving his federal summons in September 2025. Specifically, on November 2, 2025, the opposing parties manufactured a false "knife suicide attempt" to force a clinical entry point at Newton-Wellesley Hospital, securing a fraudulent diagnosis of PTSD (F43.10) based entirely on hearsay—directly

contradicting a January 3, 2023, evaluation showing no psychiatric disorder and school records proving the child's baseline stability.

This medical predicate was used to execute a Section 12a commitment to a locked-door facility (Boston Children's Hospital - Franciscan CBAT) in November 2025. There, a further ungrounded diagnosis of Major Depressive Disorder (MDD) was attached to justify aggressive pharmacological intervention, forcing a daily regimen of Sertraline (rapidly doubled to 50 mg despite an FDA Black Box Warning) and Clonidine. This aggressive medication served as a chemical restraint to ensure witness compliance and suppress the child while Dale School staff simultaneously reported her as "phenomenal" and "stable." The state court actively insulated this medical fraud by failing to adjudicate an Emergency Injunction to stay the medications, leaving the child subjected to continuous, dangerous levels of unwarranted psychotropic drugs and permanent clinical stigma.

- **Unaddressed Physical Violence, Injuries, and Coerced Framing:**

  The domestic environment involves a documented history of severe anger-management problems by both Carolyn Gannon and Brian Divasta, where the adult custodian Carolyn Gannon and her partner Brian Divasta have engaged in "boxing" as a maladaptive somatic coping mechanism to externalize explosive anger. This physical violence directly resulted in physical trauma to the older minor child, who was left with documented bruises on her shins and suprapubic area. Following this incident, state and private actors engaged in a coordinated effort to insulate the custodians by framing Appellant for the injuries. This culminated in a May 10, 2023, evaluation by Dr. Sasha Svendsen at the UMass Child Protection Program, where the minor child was actively coerced into providing false statements regarding the true origin of her injuries to protect Defendants DiVasta and Gannon. It was forensically established that Appellant has not caused the injuries discovered by Dr. Svendsen but they happened in sole custody of Carolyn Gannon. Furthermore, later discovered evidence proves that Carolyn Gannon boxed on older minor child per directions from Brian Divasta. Despite State Defendants and GAL Defendant having this information, they chose to ignore it and look the other way. In addition, the older minor child suffered unaddressed severe physical injuries while in their sole custody, including a broken wrist, a sprained thumb – also known to State Defendants and GAL Defendant.

  Both minor children developed constipation that requires medical intervention due to stress since separation from Appellant and while being in sole custody of Carolyn Gannon.

- **Substance Use Disorder, Criminal History, and Statutory Impairment:**

  The minor children are subjected to daily supervision in an environment dominated by severe, unaddressed substance use disorders. Defendant Brian DiVasta is a convicted felon (*Framingham*

*District Court, Case No. 1449CR001318*) under M.G.L. c. 90, § 24V and § 24(1)(a)(1), (2)(a) for endangering his own children under the influence. Defendant DiVasta has an admitted history of severe substance abuse—including alcohol, cocaine with multiple relapses, heroin, opioids, LSD, and psilocybin—resulting in past psychiatric hospitalization due to withdrawal seizures. Further, Defendant Carolyn P. Gannon has a prior history of polysubstance abuse and tested positive for substance abuse on the SASSI-4 clinical screen while concealing use of prescription dextroamphetamine from the forensic evaluator. Both adult custodians actively utilize high-concentration medical marijuana to sleep, establishing a formal statutory record of clinical impairment for debilitating medical conditions under M.G.L. c. 94I, § 1-2. Most of this information (SUDs, criminal history) is known to State Defendants and GAL Defendant but was ignored.

- **Unaddressed Maternal Mental Illness and Neurocognitive Impairment:**

  Defendant Carolyn P. Gannon suffers from documented, serious mental illnesses and a forensically established mild neurocognitive impairment that remain entirely unmonitored and unaddressed. In an April 2025 affidavit filed with the state court, Defendant Gannon explicitly stated under oath that she is completely unable to work due to her mental illness. Despite this formal admission of psychiatric disability, the state court actively permitted her to bypass the diagnostic, treatment, and monitoring recommendations issued by the court-appointed psychologist, leaving her in sole custody of the minor children without clinical oversight.

- **Total Absence of Risk by Appellant:**

  In stark contrast, comprehensive forensic and clinical evaluations have conclusively demonstrated that Appellant has absolutely no history of substance abuse, no mental health diagnoses, and fully intact neurocognitive and executive functioning.

  The Appellant was forensically cleared of allegations raised against him by Carolyn Gannon, Norfolk County District Attorney's Office ADAs Christine Cullinan and Anne Yas, DCF.

- **Failure of State Court Remediation:**

  The irreparable harm is absolute because the state courts have consistently refused to intervene, going so far as to ignore formal letters pointing out the active falsification of the child's psychiatric records submitted by counsel to the state appellate court.

Because the minor children are currently subjected to documented physical safety risks, severe substance-induced environments, physical trauma, and forced psychiatric institutionalization, waiting the standard six to twelve months for a traditional appellate cycle will cause permanent, irreparable damage to the

children's lives and completely sever the fundamental parental bond. Immediate appellate review of the threshold jurisdictional barrier is the only mechanism available to halt this ongoing harm.

- **Structural Collapse of Due Process and Strategic Suppression of Exculpatory Evidence:**

Appellant has been separated from his minor children since March 8, 2023, based on Restraining Orders predicated entirely on Department of Children and Families (DCF) 51B reports that have been forensically disproven. For over 23 months, Appellant was systematically blocked from executing his statutory right to a DCF Fair Hearing because the Norfolk County District Attorney's Office (NCDAO) and DCF leadership willfully suppressed the primary forensic evidence used against him—specifically, three Sexual Abuse Intervention Network (SAIN) interview videos dated October 25, 2022, March 22, 2023, and August 2, 2023.

Despite a January 31, 2024, administrative order from the DCF Fair Hearing Unit mandating the production of these videos, the DCF Greater Waltham Area Office willfully defaulted, producing nothing by the April 17, 2024, deadline. Consequently, on April 19, 2024, Appellant's counsel sent a formal letter to the DCF Fair Hearing Office requesting a continuance of the scheduled April 25, 2024, hearing, explicitly stating that the Department's ongoing non-compliance—then nearly two months overdue—rendered proper legal representation "impossible" and constituted a "miscarriage of justice and fair process."

The hearing was subsequently rescheduled to August 22, 2024, but the SAIN videos were still withheld. Because the Department remained in near-total default of the discovery order, Appellant's counsel was forced to file a second formal request for a continuance on August 14, 2024, pushing the Fair Hearing to December 19, 2024. On December 12, 2024, Appellant's counsel issued a formal Subpoena for Production of Documents to the Keeper of Records for the NCDAO pursuant to 110 CMR 10.13 and M.G.L. c. 30A, § 12, commanding the production of the audio, video, and transcripts of the three SAIN interviews by the December 19 hearing date. The NCDAO failed to respond or produce the records, forcing a fourth rescheduling to March 20, 2025. This continuous suppression trapped Appellant in an unconstitutional administrative "Catch-22": **under M.G.L. c. 30A, § 14, a party is strictly barred from seeking judicial review in the Massachusetts Superior Court until they have received a "final decision in an adjudicatory proceeding".** By indefinitely paralyzing the Fair Hearing through continuous evidence suppression, the state effectively insulated itself from state-level judicial oversight, blocking Appellant from clearing his name administratively while simultaneously closing the doors of the state courts.

Consequently, Appellant was forced to proceed to a multi-day custody trial on September 3, 2024, completely "forensically disarmed" without access to this primary exculpatory evidence. Because the state paralyzed the Fair Hearing through continuous defaults, the unvetted, fraudulent 51B

conclusions remained in effect, allowing the state court to permanently dismantle Appellant's family in a November 26, 2024, Final Judgment. The structural collapse culminated on February 28, 2025, when the Massachusetts Assistant Attorney General actively moved to block the December 2024 subpoena, forcing Appellant to formally withdraw from the broken administrative process on March 19, 2025. The total failure of the state mechanism to provide a fair, timely hearing renders expedited appellate review vital.

**Federal courts universally recognize that the ongoing threat to a minor child's physical well-being, immediate safety, and acute medical/psychological needs constitutes the highest tier of irreparable harm under federal equity jurisdiction. It is harm that cannot be repaired or compensated by a subsequent monetary judgment**. Immediate appellate intervention is required because every day this expedited review is delayed represents another day of unconstitutional, state-enforced separation and unmitigated risk to the minor children.

## II.    ABILITY TO PROCEED ON THE EXISTING RECORD

Expedited treatment is highly practical and procedurally straightforward because this appeal arises from a threshold dismissal. The U.S. District Court for the District of Massachusetts dismissed the action purely on procedural, jurisdictional grounds under the *Rooker-Feldman* doctrine, without conducting a trial, convening evidentiary hearings, or reviewing the underlying substantive merits.

Consequently, there are no outstanding trial transcripts to be ordered, prepared, or transcribed. The record is fully complete, static, and mature for this Court's immediate scheduling. Expediting the briefing schedule will allow the parties to promptly address the threshold jurisdictional issues decided below.

## III.    REQUEST FOR EXPEDITED ORAL ARGUMENT

Appellant respectfully requests that this Court expedite not only the briefing schedule but also set this matter for an expedited oral argument at the earliest available sitting. Given the profound constitutional liberties and ongoing child safety interests at stake, oral argument will assist the Court in swiftly navigating the threshold jurisdictional parameters of the lower court's dismissal.

## IV.    OPPOSING PARTIES' POSITION

Pursuant to **Federal Rule of Appellate Procedure 27**, Appellant initiated a formal, pre-filing conferral in a good-faith effort to resolve the issues raised in this motion without court intervention. All responding Defendants-Appellees have explicitly stated their opposition to expediting this appeal. The specific chronological statements and positions of all parties are detailed in the accompanying **Certification of Pre-Filing Conferral** attached below.

I, Yaroslav Kyrpych, Plaintiff-Appellant Pro Se, hereby certify that I initiated a pre-filing conferral in a good-faith effort to resolve the issues raised in this Motion without court intervention. On July 1, 2026, at 8:49 AM, I sent a formal

conferral notice via email to all counsel of record and *pro se* defendants, setting a responsive window closing at 5:00 PM on July 3, 2026.

The positions and verbatim statements of the parties received prior to the expiration of the conferral window are documented chronologically below:

- **The State (Commonwealth of Massachusetts Defendant-Appellees: NCDAO ADAs, DCF workers, Norfolk County Probate and Family Court Judge Lee M. Peterson**): On July 1, 2026, at 9:04 AM, AAG Fressilli stated that the Commonwealth Defendant-Appellees oppose expediting the appeal.

- **Bay State Community Services Inc and Rachael Anne Sullivan (Clinical Defendant-Appellees):** On July 1, 2026, at 9:07 AM, counsel Brendan Slean stated that the Private Clinical Defendant-Appellees (Bay State Community Services Inc and Rachael Anne Sullivan) oppose the motion.

- **Kara Carey and Ryan Faenza Carey P.C. (Private Law Firm and its Owner Defendant-Appellees):** On July 1, 2026, at 9:09 AM, counsel Scott Burke stated opposition on behalf of his clients and indicated that multiple Appellees discussed internally their intent to seek summary affirmation or dismissal under Rule 27.

- **Brian P. DiVasta (Defendant-Appellee Pro Se):** On July 1, 2026, at 11:51 AM, Defendant DiVasta stated that he opposes the motion to expedite.

- **Carolyn Gannon (Defendant-Appellee Pro Se):** On July 1, 2026, at 11:52 AM, Defendant Gannon stated that she opposes the motion to expedite.

- **Meghan Honigman (Defendant-Appellee GAL):** On July 1, 2026, 1:06 PM, counsel Rebecca Long stated that Meghan Honigman opposes the motion to expedite.

Because the responding parties offer objections, the parties remain in an impasse. Good faith conferral has failed to resolve this matter.

V.     PRAYER FOR RELIEF

For the foregoing reasons, Plaintiff-Appellant respectfully requests that this Court grant this Motion to Expedite Appeal, establish an accelerated scheduling order for briefing and oral argument, and resolve this urgent Appeal as swiftly as possible.

Respectfully submitted by:

/s/ YAROSLAV KYRPYCH

Plaintiff-Appellant Pro Se

228 Hilltop Dr,

Walpole, MA 02081

yaroslav.kyrpych@gmail.com

857-869-0080

Date: July 02, 2026

## CERTIFICATE OF SERVICE

I hereby certify that on July 2, 2026, I electronically filed the foregoing document with the Clerk of the Court for the United States Court of Appeals for the First Circuit by using the CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system.

I further certify that because the following pro se Appellees are not registered for electronic service by the court, I have served them via electronic mail and by depositing true copies in the United States mail, postage prepaid, addressed as follows:

**Brian P. Divasta**

brian.divasta@gmail.com

181 Captain Eames Cir

Ashland, MA 01721

**Carolyn P. Gannon**

carolyn.patricia0108@gmail.com

89 Pleasant St, Apt D11

Medfield, MA 02052

/s/ Yaroslav Kyrpych

Plaintiff-Appellant Pro Se

Date: July 02, 2026