Pro Se

# UNITED STATES COURT OF APPEALS

for the First Circuit

Appeal Case No. 26-1770

Kyrpych et al,

*Plaintiff-Appellant*

v.

Kelly et al,

*Defendants-Appellees*

On Appeal from the United States District Court for the District of Massachusetts, Case No: 1:25-cv-12291-FDS

PLAINTIFF-APPELLANT'S

BRIEF

**TABLE OF CONTENT**

I.      TABLE OF AUTHORITIES ...................................................................................ii

II.     JURISDICTIONAL STATEMENT.......................................................................10

III.    STATEMENT OF THE ISSUES...........................................................................11

IV.     STATEMENT OF THE CASE...............................................................................12

V.      STATEMENT OF FACTS......................................................................................12

        a.  Background and Nature of the Federal Action............................................12

        b.  Independent Claims by Plaintiff-Appellant: The Four Operational Misconduct
            Schemes.....................................................................................................12

            i.   **Block 1:** Norfolk County District Attorney's Office Evidence Suppression & Systemic
                 Obstruction of Administrative Fair Hearing..........................................12

            ii.  **Block 2:** DCF Document Fabrication & Falsification of Official Reports, First
                 Amendment Retaliation.........................................................................13

            iii. **Block 3:** Witness Tampering & Coerced Misrepresentation Through Private
                 Actors..................................................................................................14

            iv.  **Block 4:** Procurement of Search Warrants Without Probable Cause & Unlawful Seizure
                 (4th Amendment) ................................................................................14

        c.  Procedural History in the District Court....................................................15

VI.     SUMMARY OF ARGUMENT...............................................................................18

VII.    ARGUMENT.........................................................................................................18

        a.  THE DISTRICT COURT COMMITTED REVERSIBLE LEGAL ERROR BY APPLYING
            THE ROOKER-FELDMAN DOCTRINE TO DISMISS INDEPENDENT § 1983 AND §
            1985 CLAIMS ARISING FROM EXECUTIVE AND PRIVATE
            MISCONDUCT.........................................................................................20

            i.   Under *Exxon Mobil*, the *Rooker-Feldman* Doctrine Is Strictly Confined to Claims Where
                 the Federal Injury Is Caused by a State Court Judgment...................20

ii.    Appellant's Four Operational Misconduct Schemes (Allegations) Assert Independent Out-of-Court Injuries Caused by Executive and Private Actor Misconduct, Not the State Decree...................................................................................................................26

iii.    Executive Agency Misconduct Is Not Immunized Simply Because Falsified Administrative Records Were Introduced in Court.............................................................28

iv.    Under *Marshall v. Marshall* and *Ankenbrandt v Richards*, *Rooker-Feldman* Cannot Bar Claims Over Which the Norfolk County Probate and Family Court Lacked Statutory Jurisdiction Under M.G.L. c. 215 § 3 and itself disclaimed................................................29

v.    Under *Exxon Mobil*, the District Court Was Required to Sever Any Barred Prayers for Relief Rather Than Dismiss Independent Claims.................................................33

vi.    The District Court Committed Reversible Error by Disregarding Controlling Exxon Mobil Precedent Despite Explicit, Multi-Docket (Three Times) Notice.......................................35

b.    YOUNGER ABSTENTION DOES NOT APPLY AND CANNOT SERVE AS AN ALTERNATIVE GROUND FOR AFFIRMANCE.................................................................39

c.    NEITHER ABSOLUTE NOR QUALIFIED IMMUNITY SHIELDS DEFENDANTS FROM LIABILITY FOR EXTRA-JUDICIAL, INVESTIGATIVE, AND RETALIATORY CONSTITUTIONAL TORTS OR JUSTIFIES DISMISSAL.............................................42

d.    THE DISTRICT COURT ABUSED ITS DISCRETION AND ERRED AS A MATTER OF LAW BY DENYING LEAVE TO FILE THE THIRD AMENDED COMPLAINT AS "FUTILE" UNDER RULE 15(a)...............................................................................44

i.    The Standard of Review for Futility Denials Is De Novo Under Rule 12(b)(6) ...............44

ii.    The Proposed TAC Stated Facially Plausible Constitutional Claims Under § 1983 and § 1985(2) (Clause 1) ...........................................................................................45

VIII.    CONCLUSION AND PRAYER FOR RELIEF.............................................................45

IX.    CERTIFICATE OF COMPLIANCE........................................................................48

X.    CERTIFICATE OF SERVICE................................................................................49

XI.    ADDENDUM……………………………………………………………………………………….50

# TABLE OF AUTHORITIES

## Cases

- Adoption of Querida, 94 Mass. App. Ct. 771 (2019)

- Ankenbrandt v. Richards, 504 U.S. 689 (1992)

- Aponte Matos v. Toledo Davila, 135 F.3d 182 (1st Cir. 1998)

- Aponte-Torres v. Univ. of P.R., 445 F.3d 50 (1st Cir. 2006)

- Ashcroft v. Iqbal, 556 U.S. 662 (2009)

- Bagley v. Bagley, 480 Mass. 1003 (2018)

- Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007)

- Benavidez v. County of San Diego, 993 F.3d 1113 (9th Cir. 2021)

- Buckley v. Fitzsimmons, 509 U.S. 259 (1993)

- Burns v. Reed, 500 U.S. 478 (1991)

- Chartrand v. Chartrand, 295 Mass. 293 (1936)

- Ciralsky v. CIA, 355 F.3d 661 (D.C. Cir. 2004)

- Cohens v. Virginia, 19 U.S. (6 Wheat.) 264 (1821)

- Colorado River Water Conservation Dist. v. United States, 424 U.S. 800 (1976)

- Davison v. Government of Puerto Rico - Puerto Rico Firefighters Corps, 471 F.3d 220 (1st Cir. 2006)

- Doe v. Spears, 630 F. Supp. 3d 290 (D. Mass. 2022)

- Ex parte Young, 209 U.S. 123 (1908)

- Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280 (2005)

- Federación de Maestros de Puerto Rico v. Junta de Relaciones del Trabajo de Puerto Rico, 410 F.3d 17 (1st Cir. 2005)

- Foman v. Davis, 371 U.S. 178 (1962)

- Franks v. Delaware, 438 U.S. 154 (1978)

- Garcia-Catalan v. United States, 734 F.3d 100 (1st Cir. 2013)

- GASH Assocs. v. Village of Rosemont, 995 F.2d 726 (7th Cir. 1993)

- Gibson v. Berryhill, 411 U.S. 564 (1973)

- Glassman v. Computervision Corp., 90 F.3d 617 (1st Cir. 1996)

- Great Western Mining & Mineral Co. v. Fox Rothschild LLP, 615 F.3d 159 (3d Cir. 2010)

- Hardwick v. Cty. of Orange, 844 F.3d 1112 (9th Cir. 2017)

- Harlow v. Fitzgerald, 457 U.S. 800 (1982)

- Hatch v. Dep't for Children, Youth & Their Families, 274 F.3d 12 (1st Cir. 2001)

- Klimowicz v. Deutsche Bank Nat'l Tr. Co., 907 F.3d 61 (1st Cir. 2018)

- Kougasian v. TMSL, Inc., 359 F.3d 1136 (9th Cir. 2004)

- Kush v. Rutledge, 460 U.S. 719 (1983)

- Lance v. Dennis, 546 U.S. 459 (2006)

- Limone v. Condon, 372 F.3d 39 (1st Cir. 2004)

- Liteky v. United States, 510 U.S. 540 (1994)

- Little v. Doguet, No. 23-291 (U.S.)

- Manuel v. City of Joliet, 580 U.S. 357 (2017)

- Marshall v. Holmes, 141 U.S. 589 (1891)

- Marshall v. Marshall, 547 U.S. 293 (2006)

- McDonough v. Smith, 139 S. Ct. 2149 (2019)

- Mead v. Independence Ass'n, 684 F.3d 226 (1st Cir. 2012)

- Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n, 457 U.S. 423 (1982)

- Miroth v. County of Trinity, 136 F.4th 1141 (9th Cir. 2025)

- Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306 (1950)

- New Orleans Pub. Serv., Inc. v. Council of City of New Orleans (NOPSI), 491 U.S. 350 (1989)

- Paul v. Davis, 424 U.S. 693 (1976)

- Pearson v. Callahan, 555 U.S. 223 (2009)

- Pulliam v. Allen, 466 U.S. 522 (1984)

- Rodriguez-Reyes v. Molina-Rodriguez, 711 F.3d 49 (1st Cir. 2013)

- Skinner v. Switzer, 562 U.S. 521 (2011)

- Southerland v. City of New York, 680 F.3d 127 (2d Cir. 2012)

- Sprint Communications, Inc. v. Jacobs, 571 U.S. 69 (2013)

- Supreme Court of Virginia v. Consumers Union of U.S., Inc., 446 U.S. 719 (1980)

- United States v. Rivera-Marcano, 526 F.3d 1 (1st Cir. 2008)

- United States v. Throckmorton, 98 U.S. 61 (1878)

- Verizon Maryland Inc. v. Public Service Commission of Maryland, 535 U.S. 635 (2002)

- Younger v. Harris, 401 U.S. 37 (1971)

- Zinermon v. Burch, 494 U.S. 113 (1990)

**Constitutional Provisions:**

- U.S. Const. amendment I

- U.S. Const. amendment IV

- U.S. Const. amendment XI

- U.S. Const. amendment XIV

**Statutes**

- 28 U.S.C. § 1257

- 28 U.S.C. § 1291

- 28 U.S.C. § 1331

- 28 U.S.C. § 1332

- 28 U.S.C. § 1343(a)(3)

- 28 U.S.C. § 2106

- 42 U.S.C. § 1983

- 42 U.S.C. § 1985(2)

- M.G.L. c. 119, § 24

- M.G.L. c. 123, § 12

- M.G.L. c. 215, § 3

- M.G.L. c. 218, § 26

**Rules & Regulations**

a)  110 CMR 10.00

b)  Fed. R. App. P. 4(a)(1)(A)

c)  Fed. R. App. P. 28(a)(4)

d)  Fed. R. Civ. P. 8(a)

e)  Fed. R. Civ. P. 8(a)(2)

f)  Fed. R. Civ. P. 9(b)

g)  Fed. R. Civ. P. 12(b)(6)

h)  Fed. R. Civ. P. 15(a)

i)  Fed. R. Civ. P. 15(a)(1)

j)  Fed. R. Civ. P. 15(a)(2)

## II.    JURISDICTIONAL STATEMENT

Pursuant to Federal Rule of Appellate Procedure 28(a)(4), Appellant Yaroslav Kyrpych submits the following statement of basis for subject-matter and appellate jurisdiction:

### 1.    Subject-Matter Jurisdiction of the District Court:

The United States District Court for the District of Massachusetts had subject-matter jurisdiction over this action pursuant to **28 U.S.C. § 1331** (federal question jurisdiction) and **28 U.S.C. § 1343(a)(3)** (civil rights jurisdiction).

This action asserts civil rights claims under **42 U.S.C. § 1983** for alleged violations of Appellant's Fourth and Fourteenth Amendment rights under the United States Constitution, committed by executive state actors and private co-conspirators.

### 2.    Appellate Jurisdiction of the Court of Appeals:

The United States Court of Appeals for the First Circuit has appellate jurisdiction over this appeal pursuant to **28 U.S.C. § 1291**, which confers jurisdiction over appeals from all final decisions of the district courts of the United States.

### 3.    Finality of the Order Appealed From:

This appeal is taken from the Memorandum and Order entered by Chief District Judge F. Dennis Saylor IV on **June 29, 2026** [Dkt. 177], and the corresponding Final Judgment entered on **June 29, 2026** [Dkt. 179].

The judgment resolved all claims as to all parties and constitutes a final, appealable order under 28 U.S.C. § 1291.

### 4.    Timeliness of the Appeal:

Pursuant to Federal Rule of Appellate Procedure 4(a)(1)(A), Appellant filed his Notice of Appeal on **June 29, 2026** [Dkt. 180], within the mandatory thirty (30) day statutory period following the entry of final judgment.

### III.    STATEMENT OF THE ISSUES

1.  WHETHER THE DISTRICT COURT ERRED AS A MATTER OF LAW UNDER EXXON MOBIL CORP. V. SAUDI BASIC INDUS. CORP., 544 U.S. 280 (2005), AND SKINNER V. SWITZER, 562 U.S. 521 (2011), BY DISMISSING APPELLANT'S ACTION IN ITS ENTIRETY FOR LACK OF SUBJECT-MATTER JURISDICTION UNDER THE ROOKER-FELDMAN DOCTRINE BASED ON AN UNAUTHORIZED "INEXTRICABLY INTERTWINED" TEST, AND FAILING TO APPLY THE SOLE AUTHORIZED MANDATORY "SOURCE OF THE INJURY" TEST TO RETAIN JURISDICTION OVER INDEPENDENT § 1983 CLAIMS AS ESTABLISHED BY THE COURT.

2.  WHETHER THE DISTRICT COURT ABUSED ITS DISCRETION UNDER FED. R. CIV. P. 15(a)(2) BY DENYING LEAVE TO AMEND AS "FUTILE" WITHOUT REASONED ANALYSIS, WHERE THE PROPOSED PLEADING SET FORTH FACIALLY PLAUSIBLE FOURTH AND FOURTEENTH AMENDMENT CLAIMS TARGETING OUT-OF-COURT DOCUMENT FABRICATION AND EVIDENCE CONCEALMENT.

3.  WHETHER THIS COURT SHOULD EXERCISE ITS SUPERVISORY AUTHORITY UNDER 28 U.S.C. § 2106 TO DIRECT THAT THIS ACTION BE REASSIGNED TO A DIFFERENT DISTRICT JUDGE UPON REMAND TO PRESERVE PUBLIC CONFIDENCE IN THE NEUTRAL ADMINISTRATION OF JUSTICE.

## IV.    STATEMENT OF THE CASE

This is a civil rights action brought under 42 U.S.C. § 1983 seeking money damages and declarative and injunctive relief against executive state actors and private co-conspirators for independent, extra-judicial Fourth and Fourteenth Amendment violations.

## V.    STATEMENT OF FACTS

The independent constitutional violations alleged by Appellant were initially set forth in the First Amended Complaint ('FAC', Dkt. 65) and further developed, clarified, and expanded in the proposed Third Amended Complaint ('TAC', Dkt. 135). Because the District Court acknowledged independent wrongs in the FAC but denied leave to file the TAC as futile, the facts below are drawn from the FAC(Dkt 65) and TAC (Dkt. 135).

### a.    BACKGROUND AND NATURE OF THE FEDERAL ACTION

Appellant Yaroslav Kyrpych brought this action pursuant to 42 U.S.C. § 1983 and federal common law, seeking redress for independent constitutional injuries inflicted by state officials and private actors conspiring under color of law. The District Court admitted to Appellant having independent claims against Appellees-Defendants. The District Court recognized First Amended Complaint (Dkt 65) as operative document. The District Court did not allow proposed Third Amended Complaint (Dkt 135), which detailed additional extra-judicial constitutional torts under First and Fourth Amendments, finding it futile.

### b.    INDEPENDENT CLAIMS BY PLAINTIFF-APPELLANT: THE FOUR OPERATIONAL MISCONDUCT SCHEMES

**Block 1: Norfolk County District Attorney's Office Evidence Suppression & Systemic Obstruction of Administrative Fair Hearing**

**Source Allegations**: FAC (Dkt 65), TAC (Dkt 135) items Count 11, 15, items 2424-30, (p. 299-300), item 2444 (p. 302), item 2447 (p. 303),

The Norfolk County District Attorney's Office (NCDAO) and its ADAs actively suppressed primary exculpatory evidence—specifically three SAIN interview recordings—for over 23 months. Despite DCF ruling that Appellant is entitled to these videos for Fair Hearing process. This suppression was maintained to paralyze Appellant's administrative Fair Hearing process,

conceal the falsity of prior 51B reports, and mislead state courts regarding the status of criminal investigations.

The Norfolk County District Attorney's Office (NCDAO) and its ADAs, DCF repeatedly paralyzed the Fair Hearing process through pretextual "DA Stays" and intentional discovery defaults:

- **June 15, 2023:** Fair Hearing canceled based on a fraudulent "DA Stay";

- **January 31 – April 25, 2024:** DCF Waltham and NCDAO willfully defaulted on a mandatory Fair Hearing discovery order that entitled Appellant to SAIN recordings and Rule 45 subpoena to produce exculpatory SAIN interview recordings;

- **December 12, 2024:** NCDAO Keeper of Records DA Michael Morrissey defaulted on an administrative subpoena for the same exculpatory SAIN media;

- **February 28, 2025:** An Assistant Attorney General from Massachusetts Attorney General Office intervened to assert a non-existent "investigative privilege" over a case file closed 18 months prior, forcing the cancellation of the rescheduled March 20, 2025 hearing.

This coordinated out-of-court suppression systematically foreclosed Appellant's administrative remedies, leaving state-sponsored abuse classifications unreviewed in direct violation of procedural due process.

**Block 2: DCF Document Fabrication & Falsification of Official Reports, First Amendment Retaliation**

**Source Allegations:** FAC, TAC Count 1, 2, 3, 5, 7, 8, 10, 11

DCF officials systematically generated falsified state records, including 51B reports (dated Feb 8, 2023, and Apr 5, 2023) and Family Action Plan, Family Assessment, Case dictation notes. These documents intentionally omitted exonerating physical and psychological evaluations (e.g., Dr. Svendsen's May 2023 evaluation, Dr. Shapse evaluation, law enforcement – Massachusetts State Police Cybercrime Unit and Walpole PD detective search warrants) to justify ongoing state interference and bypass internal reunification policies. In response to Appellant exercising his First Amendment rights—specifically, filing formal administrative grievances, police misconduct

complaints, and notices of intent to seek judicial review—Defendants engaged in a campaign of targeted retaliation. Defendants explicitly demanded Appellant to admit to allegations they fabricated.

**Block 3: Witness Tampering & Coerced Misrepresentation Through Private Actors**

**Source Allegations:** FAC, TAC Count 9, 13, 17

State actors conspired with private entities (Bay State Community Services, Rachael Sullivan, and private parties) to subject the minor children to unneeded "trauma therapy" without children having any trauma. This therapeutic setting was weaponized to tamper with minor witnesses, coach false statements, and cover up documented substance abuse and physical injuries caused by adult custodians, elicit from them false sexual and physical abuse allegations, prepare for upcoming SAIN interview to fabricate new allegations.

In response to fling this action and specifically FAC, Appellee-Defendants engaged in witness tampering under 42 U.S.C. § 1985(2), fabricating psychiatric illness history of minor child-witness, forced fraudulent M.G.L. c. 123, § 12 commitment to psychiatric ward, and forced psychiatric medicalization (SSRI/Clonidine) of the minor child-witness. The private instigators, ER doctors (Menzies, Fu), and CBAT clinician (Murakami) committed independent, post-filing federal civil rights torts under 42 U.S.C. § 1985(2).

**Block 4: Procurement of Search Warrants Without Probable Cause & Unlawful Seizure (4th Amendment)**

**Source Allegations:** TAC Count 4.

State actors secured two consecutive search warrants lacking probable cause on March 24, 2023 (2357SW92, Dkt 155, Ex. 265, 266, 267) and April 4, 2023 (2357SW104, Dkt 155, Ex. 268, 269, 270) at Wrentham District Court (Massachusetts), executed search and seized property based on these warrants.

On March 24, 2023, Defendant Detective Taylor Bethoney, under the supervision of ADA Christine Cullinan, submitted a search warrant affidavit to Wrentham District Court containing material omissions and false representations. Specifically, the affidavit suppressed Walpole Police Report 23WAL-37-OF (which documented an alternative source for the minor child's

sexualized knowledge and was not investigated by detective and NCDAO), as well as the child's explicit statements to Walpole and Medfield police officers denying abuse, misrepresented minor child statements from SAIN in 23WAL-341-OF, and that allegations were sourced to Defendant Carolyn Gannon and were never independently corroborated by minor child to independent party. Furthermore, they concealed that it was second round of allegations stemming from Carolyn Gannon and that first round was also proven to be false. On April 4, 2023, Defendants obtained a second search warrant for Appellant's corporate laptop without probable cause, concealing that first search produced nothing to support any of the allegations and that per their own records corporate laptop was not even implicated in their allegations.

Defendants Carolyn Gannon and Sandra Fontecchio willfully participated in this joint state action by synchronizing false statements to generate the pretextual basis for the warrant applications.

### c. PROCEDURAL HISTORY IN THE DISTRICT COURT

1) **August 15, 2025 — Initial Complaint filed, Dkt 1**

2) **October 6, 2025 — Motion to Dismiss for Lack of Jurisdiction by Defendant Ryan Faenza Carey P.C., Dkt 53**

3) **October 26, 2025 —First Amended Complaint (FAC), Dkt 65**

Judge Saylor established in his Dkt 177 that FAC was operative complaint and that Plaintiff plead independent wrongs, i.e. independent claims

4) **November 10, 2025 — Motion to dismiss for failure to state a claim by Defendant Meghan Honigman, Dkt 73**

5) **November 10, 2025 — Motion to dismiss by State (Commonwealth) Defendants, Dkt 75**

State (Commonwealth) Defendants argue dismissal procedurally without addressing merits: 1) Younger abstention; 2) Rooker-Feldman doctrine; 3) Domestic relations exception; 4) 11th Amendment immunity; 5) Absolute and qualified immunity.

6) **November 10, 2025 — Motion to Dismiss by Bay State Community Services, Rachael Anne Sullivan, Dkt 76**

7) **November 16, 2025 — Motion to Dismiss for failure to state a claim by Ryan Faenza Carey P.C., Kara Carey, Dkt 78**

8) **December 1, 2025 —Second Amended Complaint (SAC), Dkt 79**

Plaintiff filed SAC without motion for leave erroneously relying on rule 15(a)(1) literally without being aware of *Mullane v. Central Hanover Bank & Trust Co* case that limits amendments under rule 15(a)(1) to only one.

9) **April 20, 2026 — Motion for Leave to File Proposed Third Amended Complaint (TAC), Dkt 135**:

Appellant filed a Motion for Leave to File a Third Amended Complaint ("TAC"), seeking to cleanly plead independent 42 U.S.C. § 1983 constitutional claims against executive officers for extrajudicial evidence fabrication, Central Registry "stigma-plus" listings, suppression of exculpatory SAIN video evidence, and administrative Fair Hearing paralysis. State (Commonwealth) Defendants did not participate in conferral under Local Rule 7.1(a)(2) despite Plaintiff-Appellant reaching out twice to them.

10) **May 4, 2026 — Deadline for Appellees' Opposition, Dkt 158:**

Under Local Rule 7.1(b)(2), Appellees' oppositions to the Motion for Leave were due on May 4, 2026. All Appellees except Rachael Sullivan and Bay State Community Services Inc failed to file an opposition, failed to request an extension of time, and failed to show good cause for delay.

11) **May 11, 2026 — Appellee's Meghan Honigman Unexcused, Late Opposition, Dkt 161:**

Seven (7) days after the governing deadline had passed, Appellee Meghan Honigman filed an untimely Opposition to the Motion for Leave without seeking prior leave or permission from the court. The filing offered no explanation or showing of excusable neglect for the procedural default.

12) **May 20, 2026 — State Actor Appellees' Unexcused, Late Opposition, Dkt 163:**

Sixteen (16) days after the governing deadline had passed, the State Actor Appellees filed an untimely Opposition without seeking prior leave or permission. The filing offered zero

explanation for their procedural default and relied on generic, boilerplate assertions—claiming Appellant's independent § 1983 action was an impermissible "collateral attack" and invoking *Rooker-Feldman*, *Younger* abstention, official immunities, the domestic relations exception, and the Eleventh Amendment essentially recycling Dkt 75. Notably, TAC cured 11th Amendment by dropping allegations against DCF and NCDAO.

13) **May 23, 2026 — Appellant's Reply Brief to State (Commonwealth) Unexcused, Late Opposition, Dkt. 164:**

Appellant filed his Reply Brief Dkt. 164, addressing Rooker-Feldman doctrine (p.12-13, 17-19, 21) via *Exxon Mobil* independent claims test, *Marshall v Marshall* case (p. 26), Younger abstention (p. 23), domestic relationship exception (p. 24) and limited jurisdiction of Norfolk County Probate and Family Court under MGL 215 § 3 (p. 24), 11th Amendment immunity (p. 27), absolute and qualified immunity (p. 27-35):

14) **June 15, 2026 — Appellant's Motion to Expedite consideration of pending motions for preliminary injunction, status conference and compel the evidence, Dkt. 172:**

Appellant filed his Motion Dkt. 172, where he addressed again Younger abstention (p. 7-8), lack of Norfolk County Probate and Family Court jurisdiction under MGL 215 § 3 to adjudicate independent claims in complaint (p. 7), Rooker-Feldman doctrine (p. 9-10) via *Exxon Mobil* and its source of injury test, *Lance v Dennis* (2006), *Davison v. Government of Puerto Rico - Puerto Rico Firefighters Corps*, 471 F.3d 220, 222 (1st Cir. 2006).

15) **June 22, 2026 — Appellant's Motion to Expedite Consideration of Pending Motion for Leave to file Third Amended Complaint, Dkt. 175:**

Appellant filed his Motion Dkt. 175, where he addressed 11th Amendment immunity (p. 4), domestic relationship exception (p. 5), Younger abstention (p. 6-8), lack of Norfolk County Probate and Family Court jurisdiction under MGL 215 § 3 to adjudicate independent claims in complaint (p. 6), Rooker-Feldman doctrine (p. 8-10) via *Exxon Mobil* and its source of injury test, *Lance v Dennis* (2006), *Davison v. Government of Puerto Rico - Puerto Rico Firefighters Corps*, 471 F.3d 220, 222 (1st Cir. 2006).

16) **June 29, 2026 —Judge Saylor issues order dismissing the case and memorandum in support, Dkt. 177-179:**

The District Court (Saylor, F.D.) issued a Memorandum and Order denying leave to amend as "futile", establishing FAC (Dkt 65) as operative complaint, admitting to Plaintiff having independent claims, and dismissing the action under *Rooker-Feldman*, adopting the State Actor Appellees' boilerplate framing while ignoring Appellant's preserved *Exxon Mobil* briefing.

## VI.    SUMMARY OF ARGUMENT

Appellant clarifies on appeal that he does not seek to overturn any state court order, i.e. review and reject state court order. This appeal is restricted solely to the independent, extra-judicial constitutional torts committed by executive state actors employed at DCF Waltham area, Norfolk County District Attorney Office (Canton, MA), Office of the Attorney General of the Commonwealth of Massachusetts under color of law and their private co-conspirators under 42 U.S.C. § 1983. As part of this legal action Appellant seeks declaratory, injunctive and monetary damages against Appellee-Defendants.

## VII.   ARGUMENT

Appellant-Plaintiff as a pro se refined his legal theories as case progresses and he understands better legal concepts that govern the case. As part of this progression, Appellant-Plaintiff submitted FAC, SAC, and TAC as an attempt to cure deficiencies he identified.

As a pro se litigant, Plaintiff-Appellant mistakenly believed that because the state court proceedings were infected by the defendants' fraud, a federal court possessed the equitable power to declare that state court judgment void due to "Extrinsic Fraud upon the Court" under *United States v. Throckmorton*, 98 U.S. 61 (1878) and *Marshall v. Holmes*, 141 U.S. 589 (1891). Plaintiff now understands that under 28 U.S.C. § 1257, the review and rejection of a final state-

court judgment is restricted exclusively to the Supreme Court. Accordingly, Plaintiff formally waives his request to void the state-court order.

In initially seeking such relief, Plaintiff-Appellant, proceeding without legal counsel, relied on historical equitable principles articulated in *United States v. Throckmorton*, 98 U.S. 61 (1878) and *Marshall v. Holmes*, 141 U.S. 589 (1891). Under those cases, courts of equity recognized an independent action to grant relief from a judgment procured by "extrinsic fraud"—that is, fraud that prevented a party from having a real contest or fully presenting their case. Plaintiff incorrectly assumed that federal district courts possessed broad federal equity jurisdiction to set aside state court judgments infected by such systemic fraud and evidence suppression.

Plaintiff-Appellant now recognizes that federal district courts are courts of limited subject-matter jurisdiction governed strictly by statute. While federal district courts possess original jurisdiction over federal questions under 28 U.S.C. § 1331 and civil rights actions under 28 U.S.C. § 1343(a)(3), Congress did not confer appellate or supervisory jurisdiction upon district courts to review or invalidate state-court judgments.

This distinction lies at the very core of the *Rooker-Feldman* doctrine. The District Court correctly recognized that under *Rooker-Feldman*, it lacked subject-matter jurisdiction to hear a direct challenge to, or to void, the state Probate and Family Court's custody rulings. Plaintiff acknowledges that his original prayer for relief requesting the federal court to invalidate or void the state court judgment was a jurisdictional pleading error based on a misunderstanding of the jurisdictional boundary between 28 U.S.C. §§ 1331/1343 and 28 U.S.C. § 1257.

However, the District Court erred in dismissing the action in its entirety. While the District Court properly identified that it could not vacate the state-court judgment, it explicitly noted in its memorandum and order that Plaintiff-Appellant asserted **independent claims** against executive actors for extrajudicial fraud, evidence fabrication, and concealment of exculpatory evidence. Under *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280 (2005), the presence of a barred claim seeking state-court modification does not deprive a federal court of jurisdiction over distinct, independent § 1983 claims targeting extrajudicial misconduct.

Plaintiff-Appellant, proceeding *pro se*, acknowledges that the FAC, proposed SAC, and proposed TAC remained defective because they mistakenly included a prayer for relief asking the federal court to declare void or invalidate the state court judgment.

Because the underlying factual narrative of the FAC, SAC, TAC contains viable, independent § 1983 claims, Plaintiff-Appellant respectfully requests that this Court **vacate the order denying leave to amend and remand the case with explicit instructions allowing Plaintiff to file a Fourth Amended Complaint (4AC).**

In the proposed Fourth Amended Complaint, Plaintiff will cure the jurisdictional defect by completely removing any request for relief seeking to void, modify, or overturn the state court judgment, focusing solely on the extrajudicial misconduct of the defendants.

a. THE DISTRICT COURT COMMITTED REVERSIBLE LEGAL ERROR BY APPLYING THE ROOKER-FELDMAN DOCTRINE TO DISMISS INDEPENDENT § 1983 AND § 1985 CLAIMS ARISING FROM EXECUTIVE AND PRIVATE MISCONDUCT

i. **Under Exxon Mobil, the Rooker-Feldman Doctrine Is Strictly Confined to Claims Where the Federal Injury Is Caused by a State Court Judgment**

The District Court's primary basis for dismissing Appellant's claims was a blanket misapplication of the *Rooker-Feldman* doctrine. As the District Court admitted in its memorandum, Appellant has independent wrongs (claims) against Appellees. It is black-letter law that *Rooker-Feldman* does not bar independent claims. Applying it here was clear legal error.

In *Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, 544 U.S. 280 (2005), the Supreme Court explicitly reined in lower courts that had overextended *Rooker-Feldman*, clarifying that the doctrine is strictly:

> "…*confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments.*" *Id.* at 284

The Supreme Court held that *Rooker-Feldman* **does not** bar federal jurisdiction simply because a federal claim relates to, or arises out of the same factual background as a state court proceeding:

> *"If a federal **plaintiff 'present[s] some independent claim**, albeit one that denies a legal conclusion that a state court has reached in a case to which he was a party, then there is jurisdiction** and state law determines whether the defendant prevails under principles of preclusion.'"*

— *Exxon Mobil*, 544 U.S. at 293 (quoting *GASH Assocs. v. Village of Rosemont*, 995 F.2d 726, 728 (7th Cir. 1993)).

The First Circuit has repeatedly reaffirmed this strict boundary. *See, e.g., Davison v. Government of Puerto Rico,* 471 F.3d 220, 222 (1st Cir. 2006)*; Klimowicz v. Deutsche Bank Nat'l Tr. Co.*, 907 F.3d 61, 65 (1st Cir. 2018); (*Rooker-Feldman* applies only where the federal injury is **caused by** the **state court judgment itself**, not by the underlying out-of-court misconduct of third parties). In *Federación de Maestros de Puerto Rico v. Junta de Relaciones del Trabajo de Puerto Rico*, 410 F.3d 17, 24, 1st Cir. 2005 (quoting *Exxon Mobil*, 544 U.S. at 293), this Court explicitly recognized *Exxon Mobil*'s operational directive to district courts: *Rooker-Feldman* does not apply where a plaintiff presents an independent claim.

The District Court invoked *Federación* as a shield to bar jurisdiction. However, *Federación*—this Court's landmark opinion adopting *Exxon Mobil*—explicitly highlights the exact exception that protects Appellant's suit. In *Federación*, this Court reaffirmed that *Rooker-Feldman* **does not apply** where a plaintiff presents an independent claim.

In *Skinner v. Switzer, 562 U.S. 521 (2011)*, the Supreme Court explicitly reaffirmed *Exxon Mobil* in the context of civil rights actions under 42 U.S.C. § 1983:

> *"When a **federal plaintiff presents an independent claim**, it is not an impediment to the exercise of federal jurisdiction that the same or a related question was earlier aired between the parties in state court."*

— *Skinner v. Switzer, 562 U.S. 521 (2011)* 562 U.S. at 532

Furthermore, the Supreme Court in *Verizon Maryland Inc. v. Public Service Commission of Maryland, 535 U.S. 635, 644 n.3 (2002)* established that the *Rooker-Feldman* doctrine is strictly

confined to judicial proceedings, leaving executive and administrative determinations entirely outside its bar. All of the Appellant's independent claims are against executive and administrative determinations in collusion with private conspirators that happened outside of state judicial proceedings.

> *"The Rooker–Feldman doctrine . . .* **has no application to judicial review of executive action, including determinations made by a state administrative agency***."*

— *Verizon Maryland Inc. v. Public Service Commission of Maryland*, 535 U.S. 635, 644 n.3 (2002)

Similar opinion is stated in *Lance v. Dennis, 546 U.S. at 464 (citing NOPSI, 491 U.S. at 356)*:

> *"The narrowness of the Rooker-Feldman rule is coextensive with the limitation that the doctrine applies only to appeals from judicial proceedings. . . .* **It does not apply to review of executive or state administrative agency action***."*

— *Lance v. Dennis*, 546 U.S. at 464 (citing NOPSI, 491 U.S. at 356)

All of Appellant's independent § 1983 claims challenge extrajudicial administrative fabrications and executive misconduct committed outside of state judicial proceedings.

This Court's decision in *Doe v. Spears* confirms that *Rooker-Feldman* cannot shield state actors accused of out-of-court report falsification. In *Doe v. Spears*, 18-12547-NMG, the District Court originally dismissed a father's § 1983 complaint against DCF social workers in its entirety based on the *Rooker-Feldman* doctrine and immunity doctrines.

On appeal, this Court vacated that dismissal (No. 20-1126). On remand, the District Court evaluated the plaintiff's independent § 1983 claims targeting extrajudicial document falsification, holding that:

> *"The knowing submission of false evidence to a court is, furthermore, an obvious violation of clearly established due process rights that does not afford the offending official the protection of qualified immunity."*
>
> — ***Doe v. Spears*, 630 F. Supp. 3d 290, 298 (D. Mass. 2022)** (citing *Hardwick v. Cty. of Orange*, 844 F.3d 1112, 1118–20 (**9th Cir**. 2017)).

Here, as in *Spears*, Appellant's § 1983 claims target independent, extrajudicial misconduct—specifically the fabrication and falsification of administrative DCF 51B reports, dictation notes, Family Action Plan and Family Assessment, and police records by executive actors prior to and independent of any judicial decree. Because the source of Appellant's injury is the executive officials' out-of-court misconduct rather than a state court judgment, *Rooker-Feldman* presents no jurisdictional bar.

**Furthermore, Appellant is not a "state-court loser" seeking to overturn an adverse state court decree.** The Norfolk County District Attorney's Office ("NCDAO") never obtained or even sought an adverse state court finding against Appellant - the DA declined to bring criminal charges in the Wrentham District Court—the court vested with statutory subject-matter jurisdiction over physical and sexual abuse allegations pursuant to **M.G.L. c. 218, § 26**. DCF never initiated care and protection proceedings in the Juvenile Court under **M.G.L. c. 119, § 24 which require rigorous adversarial testing of the evidence**. Most critically, following a full trial on the merits, the Norfolk County Probate and Family Court explicitly disclaimed any judicial adjudication of the underlying abuse allegations, issuing formal Findings of Fact on November 26, 2024, holding (Dkt 138, Ex. 41, p. 62):

*"The Court finds that there is insufficient evidence to determine whether Father sexually abused the children and the Court's role is to only determine what is in the children's best interests; it is not to assume the investigations of DCF and the NCDAO."*

The Probate Court further established in Finding 49 that, consistent with *Adoption of Querida*, 94 Mass. App. Ct. 771, 778 (2019), it gave the children's allegations **"no weight"** and explicitly declined to evaluate or adopt the contents of the allegations, utilizing agency references solely to establish a timeline (Dkt 138, Ex. 41, p. 25-26):

> *"Further, absent a general finding regarding the allegations' volume and to whom the children directed the same... the Court has given the children's allegations no weight unless an agency found them meritorious following a credible investigation (i.e., DCF or the NCDAO). Even then, the Court did not consider the contents of the allegations themselves but instead the agency's determination of the allegations' credibility following its own investigation... However, despite the Court's refusal to consider the allegations'*

*contents, the Court nevertheless details them to establish the timeline of events necessary to resolve this case."*

— *Findings of Fact*, Norfolk Probate and Family Court, Finding 49 (Nov. 26, 2024).

In its accompanying rationale (Dkt 138, Ex. 41, p. 59), the Probate Court further reaffirmed that it merely acknowledged the administrative existence of the DCF report without adjudicating its truth, stating that it utilized DCF records:

*"...(1) that DCF became involved with the family because the children made allegations about each parent (**without passing judgment on the contents of said allegations**); and (2) DCF supported [older minor child]'s sexual abuse allegations (**again without specifically considering the underlying allegations** absent their broad characterization as allegations of sexual abuse)."*

— *Findings of Fact (Rationale, p. 59)*, Norfolk Probate and Family Court (Nov. 26, 2024).

Finally, the Probate Court explicitly acknowledged in Finding 160 that Appellant was actively challenging DCF's administrative findings through executive channels (Dkt 138, Ex. 41, p. 44):

*"Father brought a Fair Hearing action to challenge DCF's supported finding of sexual abuse, which action was ongoing at the time of trial."*

— *Findings of Fact*, Norfolk Probate and Family Court, Finding 160 (Nov. 26, 2024).

Because the state court explicitly disclaimed passing judgment on or adjudicating the truth of the underlying allegations, there is no state court decree or finding establishing abuse that Appellant seeks to overturn.

Instead, Appellees generated and continue to maintain falsified administrative reports (including 51B investigation reports, dictation notes, Family Action Plans, and Family Assessments, Walpole PD report) asserting substantiated findings of abuse and manufactured claims of witness coaching/tampering in direct defiance of known forensic evidence.

On September 15, 2023, in proceedings **initiated by Appellant** before the Wrentham District Court (*In the Matter of Search Warrant 23SW0092,* Dkt 85) regarding the un-impoundment of the search warrant affidavit, the Norfolk County District Attorney's Office ADA Kristen Kelly admitted on the record before the Honorable Julieann Hernon that a thorough **forensic**

**investigation yielded no evidence to support allegations against Appellant of physical abuse, sexual abuse, or witness (minor child) coaching/tampering (the same was admitted by Walpole PD detective Taylor Bethoney during her deposition on October 19, 2023)**, and that no criminal charges would be brought and that the Commonwealth did not oppose vacating the impoundment order. Based on these admissions, the Wrentham District Court issued formal written findings and the impoundment order vacated, specifically finding that:

*"After the search warrant was executed, the Commonwealth engaged in a lengthy investigation, at the conclusion of which, it was determined that no complaint or indictment would be sought against the target."*

— *Findings and Order of the Court on Search Warrant Target's Motion to Vacate Order of Impoundment*, Wrentham District Court (Hernon, J., Sept. 15, 2023).

Crucially, these were the exact same allegations that DCF social workers used to support their fabricated 51B reports and subsequent DCF documents such as dictation notes, Family Action Plan, Family Assessment asserting substantiated findings of abuse and manufactured claims of witness coaching/tampering.

Moreover, Appellees systematically deprived Appellant of administrative due process by blocking a Fair Hearing under **110 CMR 10.00 to clear himself from allegations they fabricated while being in possession of forensic evidence that cleared Appellant of all allegations on March 29, 2023**. Despite DCF administrative order (Dkt 147, Ex. 120) entitling Appellant to the key exculpatory evidence—the Sexual Abuse Intervention Network ("SAIN") interview recordings—Appellees willfully refused to produce them, obstructing and preventing a Fair Hearing on **four separate occasions (April 25 (Dkt 139, Ex. 127), August 22 (Dkt 139, Ex. 126), December 19 (Dkt 139, Ex. 124), 2024, March 20 (Dkt 139, Ex. 125), 2025) including defying subpoena issued for SAIN videos on December 12, 2024 (Dkt 139, Ex. 125)**. On May 15, 2023, Appellees invoked a non-existent "ongoing criminal investigation" as a false pretext to prevent Fair Hearing (Dkt 139, Ex. 130).

Demonstrating a concerted, high-level effort across the Massachusetts executive branch to obstruct administrative justice, on or before February 28, 2025, an Assistant Attorney General from the Massachusetts Attorney General's Office intervened directly to block the release of the

exculpatory SAIN videos by filing formal administrative opposition to Appellant's subpoena (Dkt. 147, Ex. 123), which caused cancellation of the Fair Hearing proceedings on March 20, 2025.

Appellees further perpetrated an active fraud upon the Probate and Family Court on September 6, 2023, invoking the same false pretext of an active criminal investigation to conceal the SAIN recordings from the court and Appellant—even though the police detective's own testimony, DCF's internal records, and Defendant Gannon's medical records confirm that the criminal investigation had already been closed.

In addition, Appellees concealed exonerating Walpole PD report (Dkt. 138, Ex. 94) dated March 2, 2023 from Appellant. Appellees instructed Medfield PD to block release of exonerating report dated March 11, 2023 (Dkt 138, Ex. 98) to Appellant.

Because these critical jurisdictional facts—detailing the formal Wrentham District Court and Norfolk Probate and Family Court findings confirming the absence of any adverse state court decree—were explicitly pled in Appellant's Proposed Third Amended Complaint ("TAC") rather than the operative First Amended Complaint ("FAC"), they conclusively establish that amending the complaint to confirm the absence of a *Rooker-Feldman* bar is curative and not futile.

Appellant's federal § 1983 claims do not seek to overturn an adverse state court judgment; rather, Appellant seeks prospective declaratory and injunctive relief to compel the expungement of falsified administrative DCF 51B reports and the correction of internal police records generated by Appellees (including DCF, NCDAO, and municipal police officials) who intentionally fabricated documents notwithstanding the District Court's contrary findings.

Because Appellant's injury stems from Appellees' out-of-court document fabrication committed in direct defiance of their own known forensic evidence, *Rooker-Feldman* presents no jurisdictional bar. *See Verizon Md.*, 535 U.S. at 644 n.3; *Klimowicz*, 907 F.3d at 65.

    **ii.   Appellant's Four Operational Misconduct Schemes (Allegations) Assert Independent Out-of-Court Injuries Caused by Executive and Private Actor Misconduct, Not the State Decree**

In both the First Amended Complaint ("FAC") and the Third Amended Complaint ("TAC"), Appellant alleged discrete, independent constitutional injuries committed by executive state actors (DCF caseworkers and NCDAO prosecutors) and private co-conspirators. These injuries occurred *outside* the judicial process and exist independently of any probate custody order:

1. **Suppression of Exculpatory SAIN Records** (14th Amendment Due Process): NCDAO ADAs deliberately withheld three subpoenaed SAIN interview recordings for over 23 months to paralyze Appellant's administrative Fair Hearing remedies and conceal contradictions in state records despite DCF's order requesting production of these records to Appellant;

2. **Document Fabrication (1st and 14th Amendments):** DCF officials generated falsified 51B reports (dated Feb 8, 2023, and Apr 5, 2023) containing fabricated allegations while suppressing exonerating medical evaluations. DCF workers also fabricated case dictation notes, Family Assessment, Family Action Plan and demanded Appellant to admit to fabricated allegations;

3. **Witness Coercion & Unlawful Retaliatory Seizure (42 U.S.C. §§ 1983, 1985(2)):** Private entities conspired with state officials to execute a retaliatory Section 12a locked-door commitment on November 2, 2025, relying on manufactured hearsay directly contradicted by prior clinical data.

4. **Search Warrant Fraud (4th Amendment):** Detective Bethoney and ADA Cullinan submitted a fraudulent warrant affidavit to the Wrentham District Court twice that suppressed dispositive forensic evidence and fabricated inculpatory evidence. The source of injury is the illegal search and 153-day seizure of business assets by law enforcement officers acting in an investigative capacity (*Burns v. Reed*, 500 U.S. 478). This is a standalone Fourth Amendment claim that exists entirely independent of state domestic relations orders.

Though the District Court explicitly conceded on the record that these claims 'appear to suggest independent wrongdoing,' it committed clear legal error by failing to apply the mandatory 'source of the injury' test. Because the source of injury for each of these four operational schemes is the

defendants' extrajudicial misconduct—not the Probate Court's custody decree—*Rooker-Feldman* presents no jurisdictional bar.

### iii.   Executive Agency Misconduct Is Not Immunized Simply Because Falsified Administrative Records Were Introduced in Court

Executive agency officials cannot insulate themselves from 42 U.S.C. § 1983 liability for administrative fraud simply because their falsified documents or reports were later introduced into a judicial forum. Civil rights liability attaches directly to executive actors for their independent, wrongful acts of evidence manufacturing and administrative fabrication.

In *Manuel v. City of Joliet*, 580 U.S. 357 (2017), the Supreme Court rejected the argument that subsequent court proceedings extinguish or cleanse underlying executive evidence fabrication. Writing for the Court, Justice Kagan established that where executive officers fabricate evidence relied upon in subsequent proceedings, the process does not sanitize the government misconduct:

> *"And where legal process has gone forward, but has done nothing to satisfy the probable-cause requirement, it cannot extinguish a detainee's Fourth Amendment claim. That was the case here: Because the judge's determination of probable cause was based solely on* ***fabricated evidence, it did not expunge Manuel's Fourth Amendment claim****."*

— *Manuel v. City of Joliet*, 580 U.S. 357, 367 (2017)

Just as legal process in Manuel could not extinguish a Fourth Amendment claim built on fabricated evidence, a state family court proceeding cannot launder executive agency fraud or convert extrajudicial misconduct into a non-cognizable "judicial injury".

The Supreme Court reaffirmed the independent nature of this constitutional tort in *McDonough v. Smith*, 139 S. Ct. 2149 (2019), holding that an officer's fabrication of evidence creates a direct Fourteenth Amendment Due Process claim under § 1983. Writing for the Court, Justice Sotomayor proceeded under the framework of *"The claimed right here is a constitutional due process right not to be deprived of liberty as a result of a government official's fabrication of*

*evidence",* analyzing how such a claim targets the corruption of the truth-seeking process and applying a favorable-termination accrual rule akin to malicious prosecution. *Id.* at 2155.

Similarly, the First Circuit has long recognized that law enforcement and executive officials cannot launder constitutional violations through court machinery. *See, e.g., Limone v. Condon*, 372 F.3d 39, 44–45 (1st Cir. 2004) (holding that government officials who fabricate evidence and subvert justice violate core constitutional guarantees, and subsequent legal proceedings do not absolve them of liability).

Under *Manuel*, *McDonough*, and *Limone*, Defendants cannot hide behind a state tribunal to shield their executive agency misconduct. Because Appellant's § 1983 claims target the executive officers' independent acts of evidence fabrication and administrative fraud—wrongs that no state court order ever purged, reviewed, or extinguished—federal subject-matter jurisdiction remains firmly intact.

### iv.    Under *Marshall v. Marshall* and *Ankenbrandt v Richards*, Rooker-Feldman Cannot Bar Claims Over Which the Norfolk County Probate and Family Court Lacked Statutory Jurisdiction Under M.G.L. c. 215 § 3 and itself disclaimed

The District Court's sweeping application of *Rooker-Feldman* ignored both the statutory limits of the Massachusetts Probate and Family Court and the Supreme Court's direct mandate in *Marshall v. Marshall*, 547 U.S. 293 (2006).

The Probate and Family Court Lacked Statutory Subject-Matter Jurisdiction Under M.G.L. c. 215 Over Appellant's Independent Torts

Unlike state courts of general jurisdiction, the Massachusetts Probate and Family Court is a court of limited statutory authority whose powers are strictly circumscribed by M.G.L. c. 215. *See Chartrand v. Chartrand*, 295 Mass. 293, 296 (1936); *Bagley v. Bagley*, 480 Mass. 1003, 1004 (2018). The Probate Court possesses no subject-matter jurisdiction under M.G.L. c. 215 to hear or decide:

- 42 U.S.C. § 1983 or § 1985(2) federal constitutional torts;

- Fourth Amendment search warrant deception and 153-day illegal device seizures committed by local police (Det. Bethoney) and prosecutors (NCDAO/ADA Cullinan);

- Executive administrative due process blockades committed by DCF officials under 110 CMR 10.00; or

- Statutory witness tampering and civil conspiracy claims against private medical clinicians (Drs. Menzies, Fu, Divasta, and Murakami).

The Massachusetts Probate and Family Court could not—and did not—adjudicate the extra-judicial torts committed by these third-party executive, prosecutorial, and private actors.

Controlling Supreme Court Mandate: *Marshall v. Marshall*

In *Marshall v. Marshall*, 547 U.S. 293 (2006), the Supreme Court unanimously held that federal courts cannot apply judge-made jurisdictional bars to dismiss independent federal tort claims, particularly where those claims fall outside the narrow, specialized jurisdiction of a state tribunal:

> *"Exxon Mobil clarified that the Rooker-Feldman doctrine has sometimes been construed to extend far beyond the contours of the Rooker and Feldman cases, overriding Congress' conferral of federal-question and diversity jurisdiction on federal district courts."*

— Marshall, 547 U.S. at 305.

Reaffirming *Exxon Mobil*, Justice Ginsburg explicitly ruled that where state court proceedings do not—and legally cannot—adjudicate independent tortious conduct committed by third parties, federal courts maintain an absolute, non-discretionary duty to exercise federal-question jurisdiction under 28 U.S.C. § 1331. *Marshall*, 547 U.S. at 312–14:

> *"'It is most true that this Court will not take jurisdiction if it should not: but it is equally true, that it must take it if it has.' ... We have no more right to decline the exercise of jurisdiction which is given, than to usurp that which is not given."*
> — *Marshall*, 547 U.S. at 298–99 (quoting *Cohens*, 19 U.S. at 404).

In Marshall v. Marshall, 547 U.S. 293 (2006), Justice Ginsburg, writing for a unanimous Court, clarified that federal jurisdictional exceptions are confined strictly to cases where a federal court is asked to exercise in rem control over property in state custody:

> *"This Court therefore comprehends Markham's 'interference' language as essentially a reiteration of the general principle that, when one court is exercising in rem jurisdiction over a res, a second court will not assume in rem jurisdiction over the same res... Thus, the probate exception reserves to state probate courts the probate or annulment of a will and the administration of a decedent's estate; it also precludes federal courts from endeavoring to dispose of property that is in the custody of a state probate court. It does not bar federal courts from adjudicating matters outside those confines and otherwise within federal jurisdiction."*
>
> *— Marshall, 547 U.S. at 311–12*

Justice Ginsburg drew a bright line between state proceedings governing a specific res and independent federal legal action seeking *in personam* relief:

> *"Vickie's claim does not involve the administration of an estate, the probate of a will, or any other purely probate matter... Rather, she seeks an in personam judgment against [Defendant]... a widely recognized tort cause of action... Trial courts, both federal and state, address such claims on a daily basis."*
>
> *— Marshall, 547 U.S. at 312*

Just as Vickie Marshall did not ask the federal court to probate an estate or distribute estate assets, **Appellant in this action does not ask the federal court to adjudicate child custody, modify family court decrees, or exercise domestic relations jurisdiction under M.G.L. c. 215. Rather, Appellant seeks declaratory, injunctive, and equitable relief foremost— alongside *in personam* remedies against individual executive officials, prosecutors, police officers, and private clinical co-conspirators for standalone constitutional violations.**

Furthermore, *Marshall* forcefully rejected the notion that state legislative grants of exclusive jurisdiction to specialized state courts can strip federal courts of their statutory authority under 28 U.S.C. § 1331:

> *"Ninth Circuit error is attributable in part to the court's flourish declaring that 'a State's vesting of exclusive jurisdiction over probate matters in a special court strips federal*

*courts of **jurisdiction to entertain any probate-related matter'**... Just as a State cannot expand federal jurisdiction, so a **State cannot reduce that jurisdiction**."*

— *Marshall, 547 U.S. at 313–14*

The Supreme Court held that the domestic relations exception is strictly confined to issuing or modifying divorce, alimony, or child custody decrees:

*"Because the allegations in this complaint do not request the District Court to issue a divorce, alimony, or child custody decree, we hold that the suit is appropriate for the exercise of § 1332 jurisdiction..."*

*"The domestic relations exception encompasses only cases involving the issuance of a divorce, allowance of alimony, or child custody decree... **Federal courts retain jurisdiction over independent tort actions**."*

— *Ankenbrandt v. Richards, 504 U.S. 689 (1992)* 504 U.S. at 701–704

The State Tribunal Explicitly Disclaimed Jurisdiction Over Executive Misconduct. Crucially, because the state family court judge explicitly disclaimed her own authority to investigate executive agency fraud (*"it is not to assume the investigations of DCF and the NCDAO"*, Dkt. 138, Ex. 41, p. 62)—while simultaneously denying Plaintiff the right to cross-examine and test the foundation of the state's agency case—the federal Court is not sitting as an appellate review body over a state court judgment.

Furthermore, the state court recognized DCF's Fair Hearing as a separate, parallel process outside its purview, explicitly recording in its own findings 160 (Dkt 138, Ex. 41, p. 44) that the *"Father brought a Fair Hearing action to challenge DCF's supported finding... which action was ongoing at the time of trial."* Rather than evaluating or adjudicating those executive determinations, the family court utilized those administrative labels "without specifically considering the underlying allegations" (Dkt. 138, Ex. 41, p. 59), expressly declining to review the executive agency's work.

Because the Family Court judge disclaimed jurisdiction to review or assume the investigations of DCF, she effectively confirmed that the validity of the underlying 51B reports, search warrant affidavits, and administrative findings remained unadjudicated by the state judiciary. The

jurisdictional barrier the Defendants claim to exist does not, in fact, exist because the state court itself recognized the separation and declined to review those executive acts.

The District Court Conceded Appellant's Claims Were Independent Yet Erroneously Applied *Rooker-Feldman*

The District Court **explicitly conceded in its opinion** that Appellant asserted independent claims alleging extra-judicial misconduct distinct from state court decrees. Under *Marshall*, *Ankenbrandt*, and *Exxon Mobil*, that threshold admission ended the inquiry.

Because the Probate and Family Court had no jurisdiction under M.G.L. c. 215 over the executive agencies, law enforcement officers, prosecutors, or private parties named in this action—and refused to review their parallel determinations—Appellant's injuries from their out-of-court misconduct could not possibly flow from a state court decree. Dismissing the entire complaint under *Rooker-Feldman* after explicitly conceding the presence of independent federal claims—and after the state tribunal itself disclaimed jurisdiction to review those executive actions—is irreconcilable with *Exxon Mobil*, *Marshall*, and *Ankenbrandt*. The District Court had a non-delegable statutory duty to adjudicate Appellant's independent federal claims on the merits under 28 U.S.C. § 1331. Dismissing them under *Rooker-Feldman* was reversible legal error.

### v. Under *Exxon Mobil*, the District Court Was Required to Sever Any Barred Prayers for Relief Rather Than Dismiss Independent Claims

Appellant acknowledges that a federal district court cannot void a state court custody decree.

The District Court explicitly conceded that Appellant alleged independent wrongs committed by Defendants.

Under *Exxon Mobil*, when a complaint contains both barred requests (such as an injunction against a state court judgment) and viable independent claims (such as damages for evidence fabrication), the district court is required to **sever** the barred prayers for relief and retain jurisdiction over the independent federal claims. *Exxon Mobil*, 544 U.S. at 292–93.

The District Court acknowledged on the record that independent wrongs were alleged, yet utilized the presence of prayers targeting the state decree as a justification to dismiss the entire action as "futile." This "**all-or-nothing**" approach violated *Exxon Mobil*. The District Court was legally required to sever any barred requests for injunctive relief and allow Appellant's independent 4th and 14th Amendment claims against DCF, NCDAO, and private co-conspirators to proceed to discovery.

In ***Sprint Communications, Inc. v. Jacobs***, 571 U.S. 69 (2013), Justice Ruth Bader Ginsburg delivered the unanimous opinion of the Court. While *Sprint* heavily emphasizes the core principle that federal courts have a strict duty to exercise their jurisdiction, the specific phrasing of the **"virtually unflagging obligation"**:

> *"Jurisdiction existing, a federal court's obligation to hear and decide a case is **'virtually unflagging.'** Colorado River Water Conservation Dist. v. United States, 424 U.S. 800, 817 (1976). 'We have no more right to decline the exercise of jurisdiction which is given, than to usurp that which is not given.' Cohens v. Virginia, 6 Wheat. 264, 404 (1821). Parallel state-court proceedings do not detract from that obligation."*

> *"In the main, **federal courts are obliged to decide cases within the scope of federal jurisdiction**. Abstention is not in order simply because a pending state-court proceeding involves the same subject matter."*

— *Sprint Communications, Inc. v. Jacobs*, 571 U.S. 69, 72, 77 (2013)

> *"We have cautioned, however, that **federal courts ordinarily should entertain and resolve on the merits an action within the scope of a jurisdictional grant, and should not 'refus[e] to decide a case in deference to the States**.'"*

— *Sprint*, 571 U.S. at 73 (quoting *New Orleans Public Service, Inc. v. Council of City of New Orleans*, 491 U.S. 350, 368 (1989))

This is long-standing position of the Supreme Court when district courts attempt to use broad abstention principles to dismiss mixed pleadings:

> *"Our cases have long supported the proposition **that federal courts lack the authority to abstain from the exercise of jurisdiction that has been conferred**... Abstention from the exercise of federal jurisdiction is the exception, not the rule."*

— New Orleans Public Service, Inc. (NOPSI) v. Council of City of New Orleans, 491 U.S. 358–359 (1989)

First Circuit decision written by Judge Lynch right on the heels of *Exxon Mobil*—strongly supports the **independent claims / claim-by-claim approach** in *Federación de Maestros de Puerto Rico v. Junta de Relaciones del Trabajo de Puerto Rico*, 410 F.3d 17 (1st Cir. 2005). *Federación de Maestros* was one of the very first opinions in the country where a federal circuit court unpacked and applied the Supreme Court's *Exxon Mobil* standard, i.e. *Federación de Maestros* heavily mirrors and operationalizes the language from ***Exxon Mobil Corp. v. Saudi Basic Industries Corp.***, 544 U.S. 280 (2005) in the first circuit.

Crucially for a "mixed pleading" where some parts might be barred (such as an improper request to void a state family court judgment) while other parts are independent (such as independent civil claims or fraud claims), the First Circuit held that *Rooker-Feldman* must be applied **strictly on an issue-by-issue and claim-by-claim basis**:

> *"Thus, Exxon Mobil's explanation of the ASARCO hypothetical confirms that Rooker-Feldman applies where the state proceeding has ended with respect to the issues that the federal plaintiff seeks to have reviewed in federal court, **even if other matters remain to be litigated**."*

— *Federación de Maestros*, 410 F.3d 17, 26 (1st Cir. 2005)

### vi. The District Court Committed Reversible Error by Disregarding Controlling *Exxon Mobil* Precedent Despite Explicit, Multi-Docket (Three Times) Notice

Appellant provided the District Court with explicit, multi-docket notice across three separate filings (**Dkt. 164, 172, 175**) of controlling Supreme Court (*Exxon Mobil*, *Lance*) and First Circuit

(*Davison*, *Klimowicz*, *Limone*) authorities establishing that *Rooker-Feldman* does not bar independent extrajudicial claims.

Appellant further reinforced this binding foundation with persuasive, highly relevant sister-circuit precedents—including *Miroth v. County of Trinity* (9th Cir. 2025), *Great Western Mining* (3d Cir. 2010), *Southerland* (2d Cir. 2012), and *Hardwick* (9th Cir. 2017)—confirming that pre-judgment third-party deception and evidence fabrication form independent § 1983 torts outside *Rooker-Feldman*.

The District Court completely bypassed this entire body of law without analysis, engagement, or differentiation.

- **Explicit Notice in Dkt. 164:** Appellant alerted the court that Appellees were attempting to "smuggle the *Rooker-Feldman* doctrine into these proceedings without meeting their strict legal burdens" [Dkt. 164 at 12]. Citing *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280 (2005), Appellant provided extensive analysis of the mandatory "source of the injury" test [Dkt. 164 at 18]. Appellant further alerted the Court to MGL 215 § 3 demonstrating that Norfolk County Probate and Family Court lacked subject-matter jurisdiction over independent § 1983 torts and explicitly disclaimed reviewing executive agency misconduct [Dkt. 164, p. 24]. Crucially, Appellant cited *Southerland v. City of New York*, 680 F.3d 127 (2d Cir. 2012), *Hardwick v. Vreeken*, 844 F.3d 1112 (9th Cir. 2017), and *Limone v. Condon*, 372 F.3d 39 (1st Cir. 2004), demonstrating that social worker evidence fabrication, withholding exculpatory evidence, and coerced "confession mandates" violate the Fourth and Fourteenth Amendments and strip actors of qualified immunity.;

- **Explicit Notice in Dkt. 172:** Appellant provided a detailed four-part jurisdictional breakdown under *Lance v. Dennis*, 546 U.S. 459, 464 (2006) and *Davison v. Gov't of P.R.*, 471 F.3d 220, 222 (1st Cir. 2006) [Dkt. 172 at 9–11], emphasized that post-*Exxon Mobil*, *Rooker-Feldman* fails where a plaintiff asserts independent legal wrongs committed by adverse state actors prior to and outside of judicial proceedings [Dkt. 172 at 9–10]. Rebutting Defendants' reliance on *Younger* abstention, Appellant established that under *Sprint Communications, Inc. v. Jacobs*, 571 U.S. 69, 77 (2013), federal courts have a *"virtually unflagging obligation"* to exercise jurisdiction, and that *Younger* requires the

state forum to afford a *"competent state tribunal"* capable of deciding the federal constitutional issues (*citing Little v. Doguet*, No. 23-291; *Gibson v. Berryhill*, 411 U.S. 564, 577 (1973)). Appellant demonstrated that the Norfolk County Probate and Family Court was structurally and operationally incompetent to hear these independent § 1983 torts because the source of injury was adverse-party fraud, not judicial error. Appellant placed before the District Court the controlling rule from *Benavidez v. County of San Diego*, 993 F.3d 1113 (9th Cir. 2021) [Dkt. 172 at 9–10], highlighting that the independent **"alleged legal wrongs by [state actors] cannot avoid scrutiny because they were successful in deceiving the court."** *Id.* at 1144. Appellant further cited *Miroth v. County of Trinity*, 136 F.4th 1141 (9th Cir. 2025) to reinforce that pre-judgment third-party fraud does not trigger *Rooker-Feldman*, and alerted the court to the long-standing "extrinsic fraud" exception under *Kougasian v. TMSL, Inc.*, 359 F.3d 1136, 1140–41 (9th Cir. 2004), which completely strips *Rooker-Feldman* of force where wrongful acts by adverse parties prevent a full and fair adversary proceeding.;

- **Explicit Notice in Dkt. 175:** Re-iterating the four-part jurisdictional test under *Lance v. Dennis*, 546 U.S. 459 (2006) and *Davison v. Gov't of P.R.*, 471 F.3d 220 (1st Cir. 2006), Appellant established under *Benavidez v. County of San Diego*, 993 F.3d 1113, 1143–44 (9th Cir. 2021) and *Miroth v. County of Trinity*, 136 F.4th 1141 (9th Cir. 2025) that *Rooker-Feldman* is inapplicable to extrajudicial acts, squarely placing before the court the controlling rule that independent **"alleged legal wrongs by [state actors] cannot avoid scrutiny because they were successful in deceiving the court."** Appellant anchored this with First Circuit precedent establishing that the State's deliberate manufacturing or suppression of evidence violates core constitutional due process, *Limone v. Condon*, 372 F.3d 39, 44–45 (1st Cir. 2004), and alerted the court that adverse-party manipulation and SAIN video suppression constitutes "extrinsic fraud" under *Kougasian v. TMSL, Inc.*, 359 F.3d 1136, 1140–41 (9th Cir. 2004) [Dkt. 175 at 8–11].

Appellant notified the court that the Third Amended Complaint expressly cured state sovereign immunity objections by dismissing state agency entities (DCF and NCDAO) and substituting agency heads in their official capacities under *Ex parte Young*, 209 U.S. 123 (1908). Citing *Ankenbrandt v. Richards*, 504 U.S. 689, 701–04 (1992), Appellant

demonstrated that the domestic relations exception is an exceptionally narrow jurisdictional limitation strictly restricted to the issuance or modification of divorce, alimony, or child custody decrees. Citing *Sprint Communications, Inc. v. Jacobs*, 571 U.S. 69, 77 (2013) (*"virtually unflagging obligation"*), *Gibson v. Berryhill*, 411 U.S. 564, 577 (1973), and *Little v. Doguet*, No. 23-291, Appellant emphasized that *Younger* requires a *"competent state tribunal"* capable of deciding the federal issues. Appellant proved the Norfolk County Probate and Family Court is structurally incompetent as a matter of law because under M.G.L. c. 215, it is a court of limited statutory jurisdiction possessing zero subject-matter jurisdiction to hear independent § 1983 claims.

Finally, Appellant placed the Probate Court's own record before the District Court [Dkt. 175 at 11–12; Dkt. 138, Ex. 41, p. 25], highlighting Finding of Fact 49, where the state judge explicitly admitted relying entirely on the agency determinations of DCF and NCDAO (*"the Court has given the children's allegations no weight unless an agency found them meritorious... Court did not consider the contents of the allegations themselves but instead the agency's determination"*). This confirmed that the state court was the *victim* of the executive state actors' underlying administrative fraud rather than the source of Appellant's federal injury.

Despite receiving this exhaustive, citation-backed record across three separate dockets, the District Court issued a summary dismissal containing an **internal logical collapse**—**acknowledging that Appellant asserts independent claims while applying precedent that governs only in their absence**.

Pursuant to 28 U.S.C. § 2106, this Court possesses broad authority to "require such further proceedings to be had as may be just under the circumstances," including directing that a case be reassigned to a different district judge upon remand. See *United States v. Rivera-Marcano*, 526 F.3d 1, 8 (1st Cir. 2008); *Liteky v. United States*, 510 U.S. 540, 554 (1994). Reassignment is necessary and appropriate here under the First Circuit's three-factor framework:

1)  Unwillingness to Apply Controlling Law:

Despite explicit notice across three separate dockets (Dkt. 164, 172, 175), the District Court demonstrated an entrenched unwillingness to apply *Exxon Mobil*'s mandatory "source of the

injury" test or engage with M.G.L. c. 215, § 3. Given this complete bypass of binding Supreme Court precedent, there is a substantial risk that the trial court would have insurmountable difficulty putting aside its firmly held views upon remand.

2) Appearance of Impartiality and Public Confidence:

When a pro se litigant conducts rigorous legal research, identifies controlling Supreme Court (*Exxon Mobil*) and First Circuit (*Davison*, *Klimowicz*) precedents, and presents an unassailable record of extrajudicial fraud, a summary refusal by the trial court to apply that governing law fundamentally undermines public confidence in the judicial process. Reassignment is required to restore the appearance of an impartial, neutral arbiter.

3) Zero Duplication of Judicial Resources:

Because this action was dismissed at the Rule 12 pleading stage without discovery, summary judgment proceedings, or trial, reassignment to a different District Judge will cause zero waste or duplication of judicial resources.

Accordingly, Appellant respectfully requests that this Court vacate the dismissal order and remand this matter to a different district judge pursuant to 28 U.S.C. § 2106, or, in the alternative, remand with explicit, binding instructions directing the district court to entertain Appellant's claims strictly under the independent claim standards of *Exxon Mobil* and *Skinner*.

### b. YOUNGER ABSTENTION DOES NOT APPLY AND CANNOT SERVE AS AN ALTERNATIVE GROUND FOR AFFIRMANCE

Although the District Court did not rely on *Younger v. Harris*, 401 U.S. 37 (1971), Appellees raised Younger below. Abstention under Younger is completely inapplicable under binding Supreme Court precedent.

Under Sprint Communications v. Jacobs, This Action Does Not Fall Within Any "Exceptional" Younger Category:

In *Sprint Communications, Inc. v. Jacobs*, 571 U.S. 69 (2013), the Supreme Court unanimously restricted Younger abstention to three strictly defined, exceptional categories:

1) state criminal prosecutions;

2) civil enforcement proceedings quasi-criminal in nature; and

3) civil orders uniquely in furtherance of state courts' ability to perform judicial functions. Id. at 78.

Appellant's claims against executive officials, law enforcement officers, and private co-conspirators for out-of-court constitutional torts—including fair hearing blockades under 110 CMR 10.00, search warrant fraud, and retaliatory witness tampering under 42 U.S.C. § 1985(2)—do not fall within any Sprint category.

As Justice Ginsburg emphatically declared in *Sprint*:

> *"Divesting federal courts of the duty to orchestrate federal-question litigation whenever a related state proceeding is pending would turn federalism on its head."*

> — Sprint, 571 U.S. at 72.

NOPSI Establishes That Younger Does Not Extend to Non-Judicial Executive Misconduct or Executive Agency Blockades:

Appellees' effort to invoke Younger to shield executive and law enforcement misconduct is foreclosed by *New Orleans Public Service, Inc. v. Council of City of New Orleans* (NOPSI), 491 U.S. 350 (1989).

In NOPSI, the Supreme Court held that Younger abstention applies strictly to state judicial proceedings, not to non-judicial executive or administrative actions. Id. at 368. Justice Scalia affirmed that federal courts have a "virtually unflagging obligation" to exercise jurisdiction under 28 U.S.C. § 1331 and emphasized that Younger does not mandate deferential withdrawal whenever executive agency action is challenged:

> *"Younger does not require abstention in deference to a state judicial proceeding reviewing legislative or executive action... [A] federal court need not stay its hand simply because an executive or administrative body is involved."*

— NOPSI, 491 U.S. at 368

*Younger* Does Not Apply to Claims Challenging Purely Extra-Judicial Executive Misconduct:

Appellant's lawsuit targets **purely executive, prosecutorial, law enforcement, and private actions** that occurred entirely outside the courtroom:

- Executive administrative Fair Hearing blockades and record falsifications under 110 CMR 10.00 (Block 1);

- Pre-charge search warrant deception and 153-day commercial asset seizures by police and prosecutors (Block 4); and

- Post-filing retaliatory witness tampering, false commitments under M.G.L. c. 123, § 12, and coercive medicalization (Block 3).

None of these executive acts constitute "judicial proceedings" under *NOPSI* or *Sprint*. Federal comity exists to preserve the integrity of state courts decrees, not to grant executive agency officials or police officers' immunity from federal civil rights oversight under 42 U.S.C. § 1983.

The Probate Court Lacked Statutory Jurisdiction to Afford an "Adequate Opportunity" for Relief:

Younger abstention requires that the state forum afford an adequate opportunity to raise federal constitutional claims. *Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432 (1982).

Under M.G.L. c. 215, the Probate and Family Court is a court of limited statutory authority. It lacked subject-matter jurisdiction to hear or grant declaratory or injunctive relief for Appellant's independent § 1983 and § 1985(2) claims, grant declaratory/injunctive relief against executive agencies like DCF, or adjudicate Fourth Amendment warrant fraud committed by prosecutors and police. Because the state probate court was statutorily powerless to adjudicate these independent claims, it could not provide an "adequate opportunity" for redress.

Appellees' Bad Faith and Fraud Bar Abstention Under Younger:

Finally, Younger abstention is barred where the challenged state proceedings or administrative actions are infected by bad faith, harassment, or flagrant unconstitutionality. *Younger*, 401 U.S. at 54; *Gibson v. Berryhill*, 411 U.S. 564, 578–79 (1973). The TAC details pervasive executive

fraud, administrative blockades, and retaliatory witness tampering explicitly designed to suppress federal litigation. Federal courts cannot abstain under *Younger* to validate or protect bad-faith executive misconduct.

c.    NEITHER ABSOLUTE NOR QUALIFIED IMMUNITY SHIELDS DEFENDANTS FROM LIABILITY FOR EXTRA-JUDICIAL, INVESTIGATIVE, AND RETALIATORY CONSTITUTIONAL TORTS OR JUSTIFIES DISMISSAL

Appellees raised absolute and qualified immunity in their motions to dismiss. Because immunity doctrines were neither passed upon by the District Court nor applicable to Appellant's claims, immunity cannot serve as an alternative ground for affirmance.

i.    **Absolute and Qualified Immunity Do Not Bar Claims for Prospective Declaratory and Injunctive Relief**

As an initial matter, Appellant's primary prayers for relief seek prospective declaratory and injunctive remedies—including the expungement of fabricated administrative records under 110 CMR 10.00 and an injunction against ongoing retaliatory witness tampering under 42 U.S.C. § 1985(2).

It is black-letter law that neither absolute immunity nor qualified immunity shields government officials from claims for declaratory or injunctive relief. See *Pearson v. Callahan*, 555 U.S. 223, 242 (2009) ("*Qualified immunity is an affirmative defense to damages liability; it does not bar claims for equitable relief.*"); *Supreme Court of Virginia v. Consumers Union of U.S., Inc.*, 446 U.S. 719, 736–37 (1980) (holding absolute prosecutorial immunity inapplicable to suits for prospective injunctive and declaratory relief); *Pulliam v. Allen*, 466 U.S. 522, 541–42 (1984).

Because Appellant's primary claims seek equitable and declaratory redress, the District Court possessed non-discretionary jurisdiction over these claims regardless of any personal immunity defenses.

ii.    **Absolute Prosecutorial Immunity Is Unavailable for Pre-Charge Investigative Misconduct**

To the extent individual prosecutors (NCDAO: DA Morrissey, ADAs Cullinan, Yas, Kelly) seek absolute immunity against secondary damages claims, that defense is legally foreclosed. **The NCDAO never instituted criminal charges or initiated judicial proceedings against Appellant.**

Where no formal judicial prosecution exists, prosecutors act solely in an investigative and administrative capacity, for which **absolute prosecutorial immunity is strictly unavailable**. See *Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993) ("*A prosecutor's administrative duties and those investigatory functions that do not relate to an advocate's preparation for the initiation of a prosecution or for judicial proceedings are not entitled to absolute immunity*."); *Burns v. Reed*, 500 U.S. 478, 492–96 (1991) (holding absolute immunity does not protect prosecutors advising police or executing investigative search warrants).

Because NCDAO Defendants acted exclusively in a pre-charge, investigative capacity, and administrative interference, their conduct is subject strictly to qualified immunity standards.

### iii.    Qualified Immunity Cannot Bar Claims Involving Intentionally Fabricated Evidence and Retaliation Under Rule 12(b)(6)

Qualified immunity protects government officials only if their conduct "*does not violate clearly established statutory or constitutional rights of which a reasonable person would have known*." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

Every reasonable law enforcement officer, prosecutor, and social worker knows that:

1) fabricating search warrant affidavits and seizing commercial property for 153 days violates the Fourth Amendment (*Burns*, 500 U.S. at 495);

2) Manufacturing administrative findings and stonewalling Fair Hearing due process under 110 CMR 10.00 violates Fourteenth Amendment Due Process (*Limone v. Condon*, 372 F.3d 39, 44–45 (1st Cir. 2004)); and

3) Engaging in retaliatory witness tampering and coerced medicalization violates 42 U.S.C. § 1985(2).

Accepting the Third Amended Complaint's well-pleaded facts as true under Rule 12(b)(6), Defendants engaged in intentional, bad-faith constitutional violations. Qualified immunity

cannot support summary dismissal on a Rule 12(b)(6) motion where the complaint plausibly alleges intentional evidence fabrication and extrajudicial retaliation.

d.  THE DISTRICT COURT ABUSED ITS DISCRETION AND ERRED AS A MATTER OF LAW BY DENYING LEAVE TO FILE THE THIRD AMENDED COMPLAINT AS "FUTILE" UNDER RULE 15(a)

### i.  The Standard of Review for Futility Denials Is De Novo Under Rule 12(b)(6)

Federal Rule of Civil Procedure 15(a)(2) establishes a liberal amendment policy: *"The court should freely give leave when justice so requires."* The Supreme Court has made clear that outright denial of leave to amend without a substantial justifying reason—such as undue delay, bad faith, or clear futility—violates the mandate of Rule 15. *Foman v. Davis*, 371 U.S. 178, 182 (1962):

> *"If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, **he ought to be afforded an opportunity to test his claim on the merits**. In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive... repeated failure to cure deficiencies... undue prejudice... futility of amendment, etc.—the leave sought should, as the rules require, be 'freely given.'"*

— *Foman*, 371 U.S. at 182.

Where the district court denies leave to amend on the ground of **futility**, the First Circuit reviews that legal conclusion ***de novo***. *Glassman v. Computervision Corp.*, 90 F.3d 617, 623 (1st Cir. 1996). Under de novo review, the court applies the exact same standard as a motion to dismiss under Rule 12(b)(6):

> *"Futility' means that the complaint, as amended, would fail to state a claim upon which relief could be granted... [I]n reviewing that decision, we apply the same standard of review as applies to an explicit dismissal under Rule 12(b)(6)."*

— *Glassman*, 90 F.3d at 623.

In assessing futility, the appellate court accepts all well-pleaded factual allegations as true, draws all reasonable inferences in favor of the plaintiff, and determines whether the complaint states a plausible claim for relief. *Hatch v. Dep't for Children, Youth & Their Families*, 274 F.3d 12, 19 (1st Cir. 2001); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The plausibility standard is a low bar that must not be confused with a probability requirement or summary judgment standard. *Garcia-Catalan v. United States*, 734 F.3d 100, 102–03 (1st Cir. 2013). Under First Circuit precedent, the complaint need only set forth sufficient factual detail to make the claim plausible, evaluated holistically rather than in isolation. *Rodriguez-Reyes v. Molina-Rodriguez*, 711 F.3d 49, 53 (1st Cir. 2013) *("[T]he complaint should be read as a whole, not parsed piece by piece.").*

The TAC detailed concrete, non-conclusory factual allegations that easily satisfy the pleading requirements of Fed. R. Civ. P. 8(a) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). Under *Iqbal*, a claim achieves facial plausibility when the plaintiff pleads specific factual content directly tied to the "misconduct alleged." *Id.* at 678. While Rule 8(a)(2) calls for a "short and plain statement," providing robust factual context—specifically detailing the dates, actors, and operational mechanisms of administrative blockades and warrant deception—does not run afoul of Rule 8's notice function, *see Ciralsky v. CIA*, 355 F.3d 661, 668–70 (D.C. Cir. 2004), but rather satisfies the heightened plausibility demands of *Iqbal* and the particularity requirements of Fed. R. Civ. P. 9(b).

Under First Circuit law, detailed factual allegations in a civil rights complaint serve to provide clear notice and demonstrate plausibility, and cannot be summarily dismissed as 'futile' merely because they provide comprehensive evidentiary detail. See *Rodriguez-Reyes v. Molina-Rodriguez*, 711 F.3d 49, 53 (1st Cir. 2013) (holding that civil rights complaints must be evaluated holistically based on the factual picture presented).

### ii. The Proposed TAC Stated Facially Plausible Constitutional Claims Under § 1983 and § 1985(2) (Clause 1)

#### a) Procedural Due Process & Stigma-Plus (110 CMR 10.00 Blockades):

A procedural due process claim requires a constitutionally protected interest and a deprivation without adequate procedural safeguards. *Aponte-Torres v. Univ. of P.R.*, 445 F.3d 50, 56 (1st Cir. 2006). Under the "stigma-plus" doctrine, government defamation accompanied by an alteration or elimination of a status guaranteed by law violates procedural due process. *Paul v. Davis*, 424 U.S. 693, 711 (1976); *Mead v. Independence Ass'n*, 684 F.3d 226, 233 (1st Cir. 2012).

State regulations (110 CMR 10.00 et seq.) create an explicit entitlement to a prompt administrative Fair Hearing. The TAC alleges with specificity that executive defendants fabricated severe, stigmatizing administrative findings, indefinitely suspended scheduled Fair Hearings without authority, retained false records in central registries, and used those unreviewed determinations to impair statutory rights. Taking these facts as true, Appellant stated a classic, plausible § 1983 procedural due process claim. See *Zinermon v. Burch*, 494 U.S. 113, 125 (1990).

### b)  Retaliatory Conspiracy Under 42 U.S.C. § 1985(2) (Clause 1):

The first clause of 42 U.S.C. § 1985(2) creates a federal cause of action where two or more persons conspire to deter, by force, intimidation, or threat, any party or witness from attending or testifying in federal court, or to injure such party in his person or property on account of having done so. Crucially, Clause 1 of § 1985(2) **requires NO racial or class-based animus**. *Kush v. Rutledge*, 460 U.S. 719, 724–25 (1983).

The TAC alleges specific post-filing acts of retaliation and witness tampering, including direct forced institutionalization and coercive medicalization, collusion with private clinical actors to generate fraudulent medical reports and establish non-existent fabricated psychiatric diagnoses, and temporal proximity between federal filings and retaliatory steps. Under *Kush* and *Iqbal*, these factual allegations state an actionable federal conspiracy.

### c)  Fourth Amendment Judicial Deception Under *Franks v. Delaware*:

A Fourth Amendment violation occurs under § 1983 when an officer obtains a warrant by making material misstatements or omissions intentionally or with reckless disregard for the truth. *Franks v. Delaware*, 438 U.S. 154, 155–56 (1978); *Aponte Matos v. Toledo Davila*, 135 F.3d 182, 190 (1st Cir. 1998). The TAC details precisely how officers submitted two consecutive sworn affidavits containing known falsehoods, intentionally omitted exculpatory evidence, and

executed unlawful searches and device seizures. Stripped of fraudulent assertions and supplemented with omitted facts, the affidavits fail for lack of probable cause as a matter of law.

    **d) The District Court Erred by Disregarding Well-Pleaded Facts and Declaring the TAC "Futile" in a Conclusory Manner:**

Instead of evaluating the TAC's specific factual allegations under the Rule 12(b)(6) standard, the District Court summarily labeled the TAC "futile" without analysis. Under First Circuit precedent, a district court abuses its discretion when it denies leave to amend without applying the required *Iqbal* framework to proposed claims. *Garcia-Catalan*, 734 F.3d at 102–03.

Because the TAC added crucial factual details satisfying Rule 8(a) and Rule 9(b) standards—detailing the specific dates, actors, and mechanisms of report fabrication and warrant deception—the proposed amendment was far from futile. The summary refusal to grant leave to file the TAC was an abuse of discretion and reversible error under Foman and Rule 15(a).

## VIII.   CONCLUSION AND PRAYER FOR RELIEF

For all the foregoing reasons, the District Court committed reversible legal error by misapplying the Rooker-Feldman doctrine through an unauthorized "inextricably intertwined" test, failing to apply the sole authorized "source of the injury" test mandated by *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280 (2005) and *Skinner v. Switzer*, 562 U.S. 521 (2011). Crucially, the **District Court issued a summary dismissal containing an internal logical collapse—acknowledging that Appellant asserts independent claims while applying precedent that governs only in their absence**. The court erred by dismissing the action in its entirety, erroneously declaring Appellant's proposed amendments futile under Federal Rule of Civil Procedure 15(a)(2), and ignoring controlling Supreme Court and First Circuit authority.

Because Appellant's claims target independent, extra-judicial executive agency misconduct—the source of injury is the Defendants' out-of-court misconduct, not any state court judgment. Federal subject-matter jurisdiction over these independent claims is firmly intact under *Exxon Mobil, Skinner, Davison, Klimowicz, Manuel, McDonough*, and *Limone*.

**WHEREFORE**, Appellant respectfully requests that this Court enter an Order granting the following relief:

1. **REVERSE and VACATE** the District Court's Memorandum and Order (Dkt. 177) and Order Dismissing Case (Dkt. 179) entered on June 29, 2026;

2. **REVERSE and VACATE** the District Court's ruling denying the Motion to Amend as futile; and

3. **REMAND** this action to the United States District Court for the District of Massachusetts with instructions to:

    a. Permit Appellant to file a Fourth Amended Complaint with independent claims under 42 U.S.C. §§ 1983 and 1985(2) while omitting all claims or remedies seeking to review or vacate state-court judgments; and;

    b. Direct Defendants to answer the Fourth Amended Complaint and proceed directly to discovery on these independent constitutional claims.

4. **EXERCISE** this Court's supervisory authority under 28 U.S.C. § 2106 to direct that this action be REASSIGNED to a different District Judge upon remand to preserve the appearance of justice and avoid potential difficulty in setting aside prior rulings; and

5. **GRANT** Appellant such other, further, or different relief as this Court deems just, proper, and equitable under the circumstances.


Respectfully submitted by:


/s/ YAROSLAV KYRPYCH

Plaintiff-Appellant Pro Se

228 Hilltop Dr,

Walpole, MA 02081

yaroslav.kyrpych@gmail.com

857-869-0080

Date: July 30, 2026

**CERTIFICATE OF COMPLIANCE**

I hereby certify that this brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) and First Circuit Local Rule 32.0 because this brief contains 11,865 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f). This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Times New Roman. Pursuant to First Circuit guidance for pro se litigants, no separate Record Appendix is submitted herewith, as references to the record are made directly to the District Court docket numbers and exhibits where applicable (Dkt. [X], Ex. [X]) in accordance with the underlying record on appeal.

**CERTIFICATE OF SERVICE**

I hereby certify that on July 30, 2026, I electronically filed the foregoing document with the Clerk of the Court for the United States Court of Appeals for the First Circuit by using the CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system.

I further certify that because the following pro se Appellees are not registered for electronic service by the court, I have served them via electronic mail only per mutual agreement as follows:

**Brian P. Divasta**

brian.divasta@gmail.com

**Carolyn P. Gannon**

carolyn.patricia0108@gmail.com

I further certify that because the following pro se Appellees are not registered for electronic service by the court, I have served them via regular mail:

**Anne S. Yas**

Norfolk District Attorney's Office

45 Shawmut Road

Canton, MA 02021

anne.yas@mass.gov

**Danielle Czekanski (Simmer)**

5034 N. 81st Street

Scottsdale, AZ 85250

/s/ Yaroslav Kyrpych

Plaintiff-Appellant Pro Se

Date: July 30, 2026

**ADDENDUM**

**UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS**

|  |  |  |
|---|---|---|
| YAROSLAV KYRPYCH, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) ) | **Civil Action No. 25-12291-FDS** |
| KRISTEN DENISE KELLY, et al., | ) ) | |
| Defendants. | ) ) ) | |

## MEMORANDUM AND ORDER ON PLAINTIFF'S MOTIONS TO AMEND COMPLAINT AND DEFENDANTS' MOTIONS TO DISMISS

**SAYLOR, J.**

This is an action by a *pro se* plaintiff challenging, in substance, various orders and proceedings in a child-custody dispute in the Massachusetts Probate and Family Court. Jurisdiction is asserted under 28 U.S.C. § 1331, as plaintiff seeks to redress claimed violations of his Fourteenth Amendment rights.

Plaintiff Yaroslav Kyrpych has filed suit against 22 defendants: Christine McMahon Cullinan, Kristen Denise Kelly, and Katelyn Marie Jay, all of whom are Assistant District Attorneys in Norfolk County; the Norfolk County District Attorney's Office; Elise Marian Barry, Shannon McAnulty, Sandra E. Fontecchio, Cheryl Banks, Steven F. Ruscio, Laura A. Rafael, Michelle F. Frazer, Philip J. Clossey, Katheryn L. Butterfield, Alison Coleman-Hardy, and Azelene D. Edounarzin, all of whom are present or former employees of the Massachusetts Department of Children and Families; the Massachusetts Department of Children and Families; Rachael Anne Sullivan, who is an employee of Bay State Community Services; Lee Mumford Peterson, who is a judge of the Norfolk County Probate and Family Court; Meghan Honigman, who is a court-appointed guardian ad litem; Ryan Faenza Carey, PC, which is a law firm;

Carolyn P. Gannon; and Brian P. DiVasta.  Plaintiff has also moved to amend the complaint to add Anne Yas, an Assistant District Attorney in Norfolk County; Danielle Czekanski, an employee of the Massachusetts Department of Children and Families; Bay State Community Services, Inc.; and Kara Carey, a partner at Ryan Faenza Carey, PC, as additional defendants.

*Pro se* defendant Brian DiVasta has asserted a counterclaim for defamation.  (Dkt. No. 55).  *Pro se* defendant Carolyn Gannon has asserted a counterclaim alleging that plaintiff's conduct in the family-court proceedings caused unnecessary litigation expenses and impeded her ability to work.  (Dkt. No. 56).

All other defendants have moved to dismiss on a variety of grounds.  Ryan Faenza Carey, PC has moved to dismiss on the grounds that the court lacks subject-matter jurisdiction under 18 U.S.C. § 1331, the *Rooker-Feldman* doctrine, and the domestic-relations exception; that the claims against the law firm are barred by the litigation privilege; and that the complaint fails to state a claim upon which relief can be granted.  (Dkt. Nos. 53, 78).

Bay State Community Services and Rachel Anne Sullivan have moved to dismiss on the grounds that the court lacks subject-matter jurisdiction under the *Rooker-Feldman* doctrine and the domestic-relations exceptions; that Sullivan is immunized as a mandated reporter under Mass. Gen. Laws ch. 119, § 51A; and that the complaint fails to state a claim upon which relief can be granted.  (Dkt. Nos. 63, 76).

Meghan Honigman has moved to dismiss on the grounds that the court lacks subject-matter jurisdiction under the *Rooker-Feldman* doctrine, *Younger* abstention, and the domestic-relations exception; that she is entitled to absolute immunity; and that the complaint fails to state a claim upon which relief can be granted.  (Dkt. No. 73).

2

The state defendants—the Norfolk District Attorney's Office and its employees, the Department of Children and Families and its current and former employees, and Judge Lee Mumford Peterson—have moved to dismiss on the grounds that the court lacks subject-matter jurisdiction under *Younger* abstention, the *Rooker-Feldman* doctrine, and the domestic-relations exception; that the claims are barred by sovereign immunity and absolute and qualified immunity; and that the complaint fails to state a claim upon which relief can be granted. (Dkt. No. 75).

For the reasons set forth below, defendants' motions to dismiss will be granted for lack of subject-matter jurisdiction; the claims against defendants DiVasta and Gannon will be dismissed on the same basis; and this matter will be dismissed in its entirety.

## I.  The Allegations of the Complaint

The following facts are taken from the first amended complaint, which the Court will construe at the operative complaint, and the record from the Massachusetts Probate and Family Court proceedings. *See Watterson v. Page*, 987 F.2d 1, 3 (1st Cir. 1993) (explaining that, on a motion to dismiss, a court may properly consider "official public records" and "documents sufficiently referred to in the complaint").

Yaroslav Kyrpych and Carolyn Gannon divorced in April 2022. (Am. Compl. ¶ 7, at 14, Dkt. No. 65; Norfolk Dkt. Rep. 10, Dkt. No. 1-5). Judge Lee M. Peterson oversaw the divorce proceedings in Norfolk Probate and Family Court. (Norfolk Dkt. Rep. 1). Under the separation agreement, Kyrpych and Gannon agreed to share custody of their two children. (Am. Compl. ¶ 7, at 14).

In October 2022, Gannon returned to Norfolk Probate and Family Court seeking to modify the divorce and obtain a temporary restraining order against Kyrpych on behalf of herself

and their children.  (Norfolk Dkt. Rep. 10).  She alleged that Kyrpych had sexually abused their older child.  (Am. Compl. ¶ 11, at 14).  Gannon hired Rayn Faenza Carey, PC to represent her in the custody proceedings.  (*Id.* ¶ 12, at 14).  The amended complaint suggests that DCF and the Norfolk County District Attorney's Office investigated those allegations and found them unsupported.  (*Id.* at 31).

According to the complaint, in January 2023, the older child disclosed to a school guidance counselor and primary-care provider allegations of sexual and physical abuse by Gannon, her mother, and Brian DiVasta, her mother's partner.  (*Id.* at 23-24).  Both the counselor and primary-care provider then filed DCF reports against Gannon and DiVasta.  (*Id.* at 23-25).  According to the complaint, DCF ultimately dismissed the reports "without any investigation" and without referring them to the District Attorney's Office.  (*Id.* at 24).

DCF then filed a report of abuse against Kyrpych based on the allegations made by Gannon.  (*Id.* at 28-30).  That report led to an interview of the child by the Norfolk County District Attorney's Office and a search of plaintiff's home.  (*Id.* at 29-30).  Gannon ultimately obtained a temporary restraining order from Norfolk Probate and Family Court suspending Kyrpych's custodial rights based in part on the DCF report and testimony by DCF workers.  (*Id.* at 30; Norfolk Dkt. Rep. 17).

According to the complaint, Meghan Honigman, who was appointed as guardian ad litem, allegedly falsified a report that concealed certain issues, including Kyrpych's positive evaluation.  (Am. Compl. 60).

The Norfolk District Attorney's Office referred plaintiff's children to Bay State Community Services for counseling.  (*Id.* at 46).  According to the complaint, Rachael Sullivan,

4

a Bay State Community Services counselor, allegedly traumatized the children, elicited false allegations against Kyrpych, and filed a false report against him.  (*Id.* at 46-47).

In the fall of 2024, Judge Peterson held a trial in the ongoing custody dispute.  (Norfolk Dkt. Rep. 32).  Kyrpych disputes certain evidentiary and procedural rulings made by the court; alleges improper *ex parte* communications; disputes the court's findings of fact; and challenges the denial of his access to his children on the basis of allegedly false or unsupported evidence. (*Id.* at 47-59).

On November 24, 2024, Judge Peterson entered judgment granting Carolyn Gannon "sole legal and physical custody of the parties' minor children."  (Norfolk Judgment, Dkt. No. 124-1).

Krypych brought suit in federal court on August 15, 2025.  (Dkt. No. 1).  In essence, the amended complaint alleges that DCF, Bay State Community Services, Meghan Honigman, the Norfolk District Attorney's Office, his former wife's lawyers, and Judge Peterson all violated his Fourteenth Amendment rights and various federal and state laws by suborning, creating, or knowingly relying on false evidence at the custody trial as well as concealing exculpatory evidence.  In so doing, they allegedly colluded with Krypych's former wife and her partner, Brian DiVasta, to unlawfully deprive him of his parental rights.

The complaint seeks declaratory, injunctive, and monetary relief.  In particular, it asks that the court make certain evidentiary rulings and impose certain procedures related to the custody proceedings.  (Am. Compl. 61-64).

## II.   <u>Standard of Review</u>

On a motion to dismiss for lack of subject-matter jurisdiction under Fed. R. Civ. P. 12(b)(1), "the party invoking the jurisdiction of a federal court carries the burden of proving its existence."  *Johansen v. United States*, 506 F.3d 65, 68 (1st Cir. 2007) (quoting *Murphy v. United*

*States*, 45 F.3d 520, 522 (1st Cir. 1995)).  If the party seeking to invoke federal jurisdiction "fails to demonstrate a basis for jurisdiction," the motion to dismiss must be granted.  *Id.*  When ruling on a motion to dismiss under Rule 12(b)(1), the court must "credit the plaintiff's well-[pleaded] factual allegations and draw all reasonable inferences in the plaintiff's favor."  *Merlonghi v. United States*, 620 F.3d 50, 54 (1st Cir. 2010).

For the purposes of analyzing a motion to dismiss, the complaint must be construed generously because plaintiff is proceeding *pro se*.  *See Haines v. Kerner*, 404 U.S. 519, 520 (1972); *see also Rodi v. Southern New Eng. Sch. of L.*, 389 F.3d 5, 13 (1st Cir. 2004).  "[A] pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers."  *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (citation modified); *see* Fed. R. Civ. P. 8(e) ("Pleadings must be construed so as to do justice.").  "Nevertheless, a litigant's exercise of his right to self-representation does not exempt him from complying with the relevant rules of procedural and substantive law."  *Martinez-Machicote v. Ramos-Rodriguez*, 553 F. Supp. 2d 45, 49 (D.P.R. 2007).

## III.   Discussion

### A.   Plaintiff's Motions to Amend

As a threshold matter, the Court will construe the first amended complaint, filed October 26, 2025, as the operative complaint in this case.  (Dkt. No. 65).  Although plaintiff moved on eleven occasions in September and October 2025 to amend the complaint, those motions only presented grounds for allowing amendment and did not include a proposed amended complaint.  (Dkt. Nos. 43-46, 49, 51, 57-61).  Eventually, on October 26, 2025, plaintiff filed an amended complaint.  In light of plaintiff's *pro se* status, the Court will construe the first amended complaint as an amendment permitted "once as a matter of course."  Fed. R. Civ. P. 15(a)(1).

Since then, plaintiff has filed a second amended complaint (Dkt. No. 79); a motion for leave to file a third amended complaint (Dkt. No. 135); and motions to supplement his third amended complaint (Dkt. Nos. 165, 166).  Because, as explained below, any such amendments would be futile, the Court will deny those motions.

### B.    Subject-Matter Jurisdiction

The Supreme Court has exclusive jurisdiction "over appeals from final state-court judgments."  *Lance v. Dennis*, 546 U.S. 459, 463 (2006) (citing 28 U.S.C. § 1257).  As such, under the *Rooker-Feldman* doctrine, "lower federal courts are precluded from exercising appellate jurisdiction over final state-court judgments."  *Id.*  That prohibition applies where "the losing party in state court filed suit in federal court after the state proceedings ended, complaining of an injury caused by the state-court judgment and seeking review and rejection of that judgment."  *Federación de Maestros de P.R. v. Junta de Relaciones del Trabajo de P.R.*, 410 F.3d 17, 24 (1st Cir. 2005) (quoting *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 291 (2005)).[1]

"[A] claim need not directly . . . attack a state court decision in order to fall within the scope of the *Rooker-Feldman* doctrine."  *Pierre v. Cristello*, 2017 WL 4768006, at *2 (D. Mass. Oct. 3, 2017) (quoting *DuLaurence v. Telegen*, 94 F. Supp. 3d 73, 80 (D. Mass. 2015), *aff'd*, 2016 WL 10454553 (1st Cir. Nov. 30, 2016)).  "[I]t is enough if the federal action would in

---

[1] The Supreme Court has recently clarified the *Rooker-Feldman* doctrine.  In *T.M. v. University of Marland Medical System Corporation*, the Court explained that the doctrine applies "to federal cases in which plaintiffs seek review of state-court judgments, regardless of whether those judgments are final trial-court judgments or those of a State's highest court."  2026 WL 1751823, at *9 (U.S. June 18, 2026).  Thus, *Rooker-Feldman* bars district court review even "when the state-judgment at issue is subject to further review in state appellate proceedings."  *Id.* at *3. In so deciding, the Supreme Court abrogated First Circuit precedent that applied *Rooker-Feldman* "only if the state-court proceedings have 'ended.'"  *Id.* at *5 (quoting *Federación de Maestros de P.R.*, 410 F.3d at 24-25).

Here, it appears that plaintiff has appealed the November 26, 2024 state-court judgment.  *See Kyrpych v. Gannon*, 2025-P-0472 (Mass. App. Ct. Apr. 17, 2025).  Under *T.M.*, the fact that plaintiff seeks further action in the state proceeding does not preclude the application of the *Rooker-Feldman* doctrine.

substance defeat or negate a state judgment . . . ."  *Mandel v. Town of Orleans*, 326 F.3d 267, 271 (1st Cir. 2003); *see also Hill v. Town of Conway*, 193 F.3d 33, 39 (1st Cir. 1999) (quoting *Pennzoil Co. v. Texaco Inc.*, 481 U.S. 1, 25 (1987) (Marshall, J., concurring in the judgment)) ("Where federal relief can only be predicated upon a conviction that the state court was wrong, it is difficult to conceive the federal proceeding as, in substance, anything other than a prohibited appeal of the state-court judgment.").  Ultimately, a court must decide "whether the plaintiff's federal suit is, in effect, an end-run around a final state-court judgment." *Klimowicz v. Deutsche Bank Nat'l Tr. Co.*, 907 F.3d 61, 66 (1st Cir. 2018).

That is very clearly the case here.  On November 26, 2024, the Norfolk County Probate and Family Court entered judgment granting Carolyn Gannon "sole legal and physical custody of the parties' minor children." (Norfolk Judgment).  Plaintiff then filed suit in this Court.  The complaint essentially alleges that nearly every person involved in the state-court case engaged in misconduct that led to plaintiff being wrongfully deprived of his parental rights.

Plaintiff's "only real injury . . . is ultimately . . . caused by [the] state court judgment." *Davison v. Government of P.R.-P.R. Firefighters Corps.*, 471 F.3d 220, 223 (1st Cir. 2006).  In other words, he has not asserted an injury independent of the deprivation of his parental rights caused by the state-court judgment.  Although some of his claims appear to suggest independent wrongdoing, all of the challenged conduct ultimately implicates the judgment because it relates to the custody determination.  *See Klimowicz*, 907 F.3d at 65 (finding that *Rooker-Feldman* barred claims for "unfair and deceptive practices" that implicated the Housing Court's judgment); *see Speight v. Kaelblein*, 2025 WL 1824768, at *2 (D. Mass. May 16, 2025) (finding that *Rooker-Feldman* barred claims that were "worded in ways that suggest actionable wrongdoing" but "challenge[d]—collaterally—rulings by the Massachusetts Probate and Family

Court").  Plaintiff cannot "evade the reach of the *Rooker-Feldman* doctrine by artful pleading." *Klimowicz*, 907 F.3d at 65.  Read as a whole, the complaint plainly requests that this Court find that the state-court judgment was wrongly decided because it was based on alleged conflicts of interests, relied on fabricated reports, and overlooked exculpatory evidence.[2]

In short, this federal suit seeks review and rejection of the state-court judgment terminating his custodial rights.  The Court is without the power to do so and therefore will dismiss all of plaintiff's claims.  Furthermore, the proposed amendments to the complaint would be futile, as they suffer from the same essential flaw.  Because the *Rooker-Feldman* doctrine bars plaintiff's suit in its entirety, the Court does not reach defendants' alternative arguments for dismissal.

### C.    Defendants and Counterclaimants Carolyn Gannon and Brian DiVasta

*Pro se* defendants and counterclaimants Carolyn Gannon and Brian DiVasta have not moved to dismiss the complaint.  Nevertheless, the Court has an independent obligation to assess its subject-matter jurisdiction.  *See In re Recticel Foam Corp.*, 859 F.2d 1000, 1002 (1st Cir. 1988).  In addition, their asserted counterclaims appear to allege state-law defamation and other tort claims.  Because the Court lacks jurisdiction over the claims against them, it lacks jurisdiction to hear counterclaims with no independent jurisdictional basis.  *See* 6 WRIGHT & MILLER'S FEDERAL PRACTICE & PROCEDURE § 1414 (3d ed. 2026).  Accordingly, both plaintiff's

---

[2] The original complaint explicitly asked the Court to "[r]estore [p]laintiff's parental rights in full."  (Dkt. No. 1, at 27).  Plaintiff omitted that request for relief from his first amended complaint (the operative complaint). (Dkt. Nos. 65).  The proposed second amended complaint asks the Court to "[s]et aside all Norfolk Probate and Family Court orders and findings of fact since April 22, 2022."  (Dkt. No. 79, at 60).  His proposed third amended complaint explicitly seeks a permanent injunction "vacating the November 26, 2024, state judgment and prohibiting all Defendants from further enforcement of its terms."  (Dkt. No. 135-1, at 420).  That further demonstrates that the suit is in substance a challenge to the state-court judgment.

claims against Gannon and DiVasta and their counterclaims against plaintiff will be dismissed for lack of jurisdiction.

## IV.    Conclusion

As set forth above, the Court construes the first amended complaint (Dkt. No. 65) as the operative complaint.  Defendants' motions to dismiss are GRANTED; all other pending motions (other than Dkt. No. 121, which is the subject of a separate order) are DENIED as moot; and this case is DISMISSED in its entirety.

**So Ordered.**

|  |  |
|---|---|
|  | /s/ F. Dennis Saylor IV |
|  | F. Dennis Saylor IV |
| Dated:  June 29, 2026 | United States District Judge |