# UNITED STATES COURT OF APPEALS

for the First Circuit

Appeal Case No. 26-1770

Kyrpych et al,

*Plaintiff-Appellant*

v.

Kelly et al,

*Defendants-Appellees*

On Appeal from the United States District Court for the District of Massachusetts, Case No: 1:25-cv-12291-FDS

## MOTION FOR LEAVE TO FILE SECOND SUPPLEMENTAL TO APPELLANT'S OPENING BRIEF

Pursuant to Federal Rule of Appellate Procedure 27 and First Circuit Local Rule 27.0, Appellant pro se Yaroslav Kyrpych respectfully moves this Honorable Court for leave to file his attached Second Supplemental to Opening Brief. In support thereof, Appellant states as follows:

1. **Threshold Jurisdictional Focus:** On June 29, 2026, the District Court (Saylor, J.) issued a Memorandum and Order dismissing Appellant's operative First Amended Complaint (Dkt. 65) for lack of subject-matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1), relying on the *Rooker-Feldman* doctrine.

2. **Necessity of Supplemental Briefing:** Appellant seeks leave to submit this Second Supplemental Opening Brief to address critical, outcome-determinative jurisdictional errors embedded within the District Court's Order (Op. at 6, 8, 9 n.2, Dkt. 177). Specifically, the brief exposes:

   - **The Fatal Internal Contradiction and Euphemistic Bypass:** The District Court's reliance on descriptive euphemisms ("ultimately implicates" / "relates to") to quietly revive the "inextricably intertwined" formulation—a concept never sanctioned by *Feldman* and explicitly refuted by the Supreme Court in *Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, 544 U.S. 280 (2005), *Marshall v. Marshall*, 547 U.S. 293 (2006), and *Skinner v. Switzer*, 562 U.S. 521 (2011).

   - **Subversion of Power and Independent Constitutional Torts:** How the District Court improperly treated independent executive, administrative, and police misconduct—including evidence fabrication, false affidavits submitted to Wrentham District Court, gross violations of Category E GAL standards, and fraud on judicial institutions—as intrinsic components of a state court decree rather than actionable 42 U.S.C. § 1983 claims.

   - **Footnote 2 and the Operative Pleading Rule:** The District Court's violation of Rule 15 standards by declaring Dkt. 65 the sole operative complaint while reaching outside its four corners to inspect superseded pleadings (Dkt. 1) and unallowed proposed amendments (Dkt. 79, Dkt. 135-1) to manufacture a non-existent *Rooker-Feldman* bar.

3. **No Unreasonable Delay or Prejudice:** Clarifying threshold Article III subject-matter jurisdiction is an indispensable prerequisite to meaningful appellate review. Allowing this brief will aid the Court's determination of whether mandatory federal question jurisdiction exists under 28 U.S.C. § 1331 without causing undue delay or prejudice to Appellees.

4. **Incorporation of Brief:** Appellant's proposed Second Supplemental Opening Brief is submitted concurrently herewith.

WHEREFORE, Appellant respectfully requests that this Court grant leave to file the attached Second Supplemental to Opening Brief.

Dated: October 04, 2026

Respectfully submitted,

/s/ YAROSLAV KYRPYCH

Plaintiff-Appellant Pro Se

228 Hilltop Dr,

Walpole, MA 02081

yaroslav.kyrpych@gmail.com

857-869-0080

**PROPOSED SECOND SUPPLEMENTAL TO OPENING BRIEF**

## I. INTRODUCTION AND STATEMENT OF THE ISSUE

**(Exposing the District Court's Fatal Internal Contradiction, Legal Impossibility, and Euphemistic Revival of the Discarded "*Inextricably Intertwined*" Doctrine Under *Rooker-Feldman*)**

Jurisprudence is fundamentally anchored in formal logic. A legal doctrine cannot operate in defiance of the foundational Law of Non-Contradiction, which dictates that two contradictory propositions cannot both be true at the same time and in the same sense.

This supplemental brief demonstrates that the District Court's dismissal order (Dkt. 177) rests upon a fatal internal contradiction, a legal impossibility, and an erroneous conflation of factual context with legal causation. The opinion below constructed two mutually exclusive holdings:

1. This supplemental brief exposes a fatal logical oxymoron and procedural subversion embedded within the District Court's dismissal order (Saylor, J.). The District Court committed a fundamental legal paradox: while explicitly conceding that Appellant's operative First Amended Complaint alleges conduct that "***appear[s] to suggest independent wrongdoing***", the court nonetheless dismissed the action under the *Rooker-Feldman* doctrine by declaring that "***all of the challenged conduct ultimately implicates the judgment***." (Op. at 8, Dkt. 177).

2. The Pleading Contradiction: On Page 6 of the Memorandum and Order, the District Court explicitly held as a threshold matter that Appellant's First Amended Complaint (Dkt. 65) is the sole operative complaint under Federal Rule of Civil Procedure 15(a)(1) (Op. at 6, Dkt. 177). Yet, in Footnote 2 on page 9, the court reached outside Dkt. 65 to rely on superseded prayers for relief from the initial, dead complaint (Dkt. 1) and proposed, unallowed future amendments (Dkt. 79, 135-1) to manufacture a jurisdictional defect (Op. at 6, 9 n.2, Dkt. 177).

Crucially, the District Court's reliance on the phrase "***ultimately implicates***" is a deliberate descriptive euphemism deployed as back-door invocation of the "***inextricably intertwined***" "doctrine"—a concept never sanctioned in *Feldman* by the Supreme Court, and later explicitly refuted and rejected by the Supreme Court in *Exxon Mobil Corp. v. Saudi Basic Industries Corp.*,

544 U.S. 280 (2005) *Marshall v. Marshall*, 547 U.S. 293 (2006), and *Skinner v. Switzer*, 562 U.S. 521 (2011). Aware that explicitly using the forbidden words "***inextricably intertwined***" would trigger immediate appellate reversal, the District Court substituted descriptive language to perform the exact same prohibited jurisdictional maneuver.

As a matter of settled federal jurisprudence and formal logic, an act cannot simultaneously be an **independent wrong** and an **intrinsic component of a judicial decree**. By attempting to merge these mutually exclusive legal concepts through euphemistic phrasing, the District Court created a logical and jurisdictional oxymoron that invalidates its own threshold reasoning.

Furthermore, the dismissal order failed to maintain the essential legal distinction between a court as a state institution and individual actors who subvert official power. The operative complaint (Dkt. 65) alleges independent, extrinsic constitutional torts committed by state and private actors ("Peterson, Cullinan, Yas, Carey, et al.") who subverted official power, statutory positions, and procedural rules to commit fraud on two distinct judicial institutions:

- Norfolk County Probate and Family Court;
- Wrentham District Court.

Crucially, these actors did not merely manufacture and submit fabricated evidence—including false affidavits and unsworn hearsay—to those courts; they **actively foreclosed any opportunity to refute or dismantle that fabrication**. By systematically blocking and stonewalling Appellant's statutory right to an administrative 110 CMR Fair Hearing, Defendants deliberately insulated their fabricated evidence from administrative correction or evidentiary testing, weaponizing the administrative process to ensure the state courts remained misinformed.

To the extent that a specific prayer for relief in Dkt. 65 (such as Section IV(b)(m) regarding findings of fact) could be construed as improperly requesting direct modification of a state record, settled First Circuit and Supreme Court law mandates that a federal court must sever or strike that specific request while retaining mandatory subject-matter jurisdiction over all independent claims for declaratory and monetary relief. Dismissing an entire civil rights action for lack of subject-matter jurisdiction based on a specific prayer for relief constitutes reversible legal error.

## II. ARGUMENT

### 1. The District Court's Ruling Collapses Under a Formal Internal Contradiction, Legal Impossibility, and a Euphemistic Bypass of Binding Supreme Court Precedent

The District Court's analysis under subject-matter jurisdiction fails because it relies on an internal contradiction that violates basic principles of logical coherence and binding Supreme Court authority:

*"Although some of his claims appear to suggest* ***independent wrongdoing****, all of the challenged conduct* ***ultimately implicates the judgment*** *because it* ***relates to*** *the custody determination."* (Op. at 8, Dkt. 177).

This reasoning creates an inescapable legal and logical oxymoron across four distinct dimensions:

a. **Euphemistic Re-Introduction of the Discarded "Inextricably Intertwined"**: In *Exxon Mobil*, 544 U.S. at 284, *Marshall*, 547 U.S. at 306, and *Skinner*, 562 U.S. at 532, the Supreme Court repeatedly reined in lower courts and confined *Rooker-Feldman* strictly to "*state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments*." The Supreme Court explicitly warned federal tribunals against misusing the vague "***inextricably intertwined***" label to sweep away **independent** federal civil rights actions addressing executive misconduct. A strict reading of *DC Court of Appeals v. Feldman*, 460 U.S. 462, 486 (1983) itself confirms that the phrase was never created as a standalone jurisdictional path to divest federal courts of original jurisdiction under 28 U.S.C. § 1331 over independent constitutional torts.

Recognizing that an explicit "***inextricably intertwined***" holding would violate post-*Exxon Mobil* and post-*Marshall* precedent, the District Court substituted descriptive euphemisms—claiming the independent misconduct "***ultimately implicates***" or "***relates to***" the custody decree. Swapping forbidden legal jargon for a descriptive synonym does not alter the underlying legal error. The District Court unlawfully used euphemistic language to perform the exact maneuver *Exxon Mobil* and *Marshall*

strictly prohibited: using a state judgment as a broad shield to insulate prior, independent executive torts from federal scrutiny.

b. **Violation of the Law of Non-Contradiction (A and Not-A)**: In legal analysis, a claim is either *extrinsic* (an independent tort committed by executive state actors outside the judicial decision) or *intrinsic* (a direct challenge seeking to overturn a state court judgment). Under binding First Circuit authority, *Rooker-Feldman* strictly applies **only** to the latter. See *Puerto Ricans for Puerto Rico Party v. Dalmau*, 544 F.3d 58, 68 (1st Cir. 2008).

By defining Appellant's claims as "***independent wrongdoing***" (**A**) while simultaneously declaring them barred as **non-independent** because they "***implicate***" the judgment (**Not-A**), the District Court asserted **A** and **Not-A** in the exact same breath. A federal court cannot acknowledge that executive actors engaged in independent misconduct and then instantly erase that independence through jurisdictional wordplay.

c. **The Fallacy of the "Dependent Independent" Act - Subversion of Governmental Power and Fraud on Judicial Institutions**: The District Court's holding creates a logical impossibility: "dependent independent wrongdoing". Independent executive misconduct—such as the fabrication of administrative reports (DCF and Walpole PD acting under direction and guidance of Norfolk County District Attorney's Office aka NCDAO), submission (Walpole PD under direction and guidance of Norfolk County District Attorney's Office ) of false affidavits and obtaining search warrants under such false affidavits from Wrentham District Court, gross violations of Massachusetts Category E Guardian ad Litem (GAL) Evaluator Standards, clinical fraud, suppression of exculpatory evidence, and opposing counsel actively participated in and facilitated this fraud in direct violation of Mass. R. Prof. C. 3.3, 3.4, and 8.4 — does not magically lose its independent character merely because the perpetrators successfully used that fabricated evidence into court records or subverted state processes. Judge Lee M. Peterson actively subverted her judicial office to facilitate and execute this scheme, committing fraud on the tribunal in violation of the Massachusetts Code of Judicial Conduct (SJC Rule 3:09).

Subverting governmental authority to perpetrate fraud on executive and judicial institutions by organized group of state employees in collaboration with private parties constitutes an independent constitutional tort under 42 U.S.C. § 1983. It does not become an "***intrinsic part of a state court judgment***" merely because the perpetrators succeeded in using state court dockets as the vehicle for their unlawful scheme, and entirely separate from the underlying custody order.

d. **The Fallacy of Equivocation: Conflating Factual Context with Legal Causation**: The District Court committed the logical fallacy of equivocation by swapping the meaning of "causation" with "relationship." *Rooker-Feldman* bars claims where the injury itself was caused directly by a state court judgment. It does not bar claims where the injury was caused by state actors' independent wrongful acts, even if those acts were factually related to or later introduced within a state court proceeding. Conflating factual intersection with legal causation is a **pretextual jurisdictional maneuver** deployed to convert *Rooker-Feldman* into an all-encompassing, unauthorized immunity shield for state actors who commit statutory, regulatory, and constitutional fraud.

2. **The District Court's Pretextual Mischaracterization of Pleading Evolution and Refusal to Apply the Operative Complaint Rule (Footnote 2)**

The jurisdictional dismissal fails as a matter of procedural and substantive federal law because it conflicts with controlling Rule 15 standards and misapplies *Rooker-Feldman* to independent prayers for declaratory relief:

> *"As a threshold matter, the Court will construe the **first amended complaint**, filed October 26, 2025, as the **operative complaint** in this case. (Dkt. No. 65)."* (Op. at 6, Dkt. 177).

Despite formally establishing Dkt. 65 as the sole operative pleading, the District Court engaged in **pretextual jurisdictional reasoning** to circumvent subject-matter jurisdiction:

a. **Violation of the Operative Pleading Rule:** Under Rule 15 of the Federal Rules of Civil Procedure and controlling First Circuit precedent, an amended complaint

completely supersedes all prior complaints, rendering them legal nullities. See *Connectu LLC v. Zuckerberg*, 522 F.3d 82, 91 (1st Cir. 2008). Subject-matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) must be evaluated **exclusively** on the four corners of the operative First Amended Complaint (Dkt. 65).

b. **Pretextual Reliance on Superseded and Proposed Amendments:** To construct a false *Rooker-Feldman* bar, the District Court improperly reached outside Dkt. 65—pointing to prayers for relief in the initial superseded complaint (Dkt 1) and unallowed proposed future amendments (Op. at 6, 9 n.2, Dkt. 177). In Footnote 2 of the Memorandum and Order, the District Court departed from controlling Rule 15 standards to construct a *Rooker-Feldman* bar. In Footnote 2, the District Court acknowledged that Appellant explicitly omitted requests to restore parental rights from the operative First Amended Complaint (Dkt. 65), but nevertheless reached outside Dkt. 65 to analyze:

- Superseded requests for relief from the initial, dead complaint (Dkt. 1, p. 27); and
- Proposed requests for relief from unallowed, proposed future amendments (Dkt. 79, p. 60; Dkt. 135-1, p. 420).

Using Footnote 2 to resurrect superseded prayers for relief and import proposed unallowed amendments violates established Rule 15 standards. A federal court cannot declare a complaint operative under Rule 15 while simultaneously inspecting discarded pleadings and unallowed future drafts to impute jurisdictional defects into the operative complaint. Subject-matter jurisdiction must be judged on what is actively pled within the four corners of Dkt. 65.

Reaching outside the operative complaint to import discarded prayers for relief is a **judicial artifice** deployed solely to manufacture a jurisdictional defect that does not exist in Dkt. 65.

c. **Independent § 1983 Damages Jurisdiction in Dkt. 65**: The operative First Amended Complaint (Dkt. 65, Section IV) explicitly omitted requests to overturn state custody decrees and instead demanded **declaratory**, **compensatory and**

**punitive relief** against individual state, executive, and judicial actors for independent constitutional violations (FAC Section IV(c)(a)).

Under *Exxon Mobil*, 544 U.S. at 284, *Skinner v. Switzer*, 562 U.S. 521, 532 (2011), a federal court maintains mandatory subject-matter jurisdiction under 28 U.S.C. § 1331 over independent 42 U.S.C. § 1983 claims seeking damages against state actors, regardless of whether the factual fallout touched a state court docket.

d. **Improper Wholesale Dismissal Based on Specific Requests for Relief**: To the extent the District Court relied on specific injunctive requests in Dkt. 65—such as Section IV(b)(m) requesting correction of findings of fact—to characterize the entire action as a prohibited state court appeal under *Rooker-Feldman*, the court committed threshold legal error.

Under settled federal and First Circuit jurisprudence, a demand for relief is distinct from the underlying cause of action and **does not dictate subject-matter jurisdiction**. See *Avco Corp. v. Aero Lodge No. 735*, 390 U.S. 557, 561 (1968) (holding that "the nature of the relief available after jurisdiction attaches is different from the question whether the court has jurisdiction," and that an error in requesting relief "does not go to the jurisdiction of the court"); *Town of Portsmouth v. Lewis*, 813 F.3d 42, 48 (1st Cir. 2016) (confirming that "a party's error in requesting that relief does not affect a court's jurisdiction"); see also Fed. R. Civ. P. 54(c) (mandating that courts grant the relief to which a prevailing party is entitled, even if omitted or improperly framed in the prayer for relief).

Because the operative First Amended Complaint (Dkt. 65) contains independent, actionable Section 1983 claims for declaratory judgment and monetary damages, a specific prayer for injunctive relief that approaches the *Rooker-Feldman* boundary cannot divest the federal court of subject-matter jurisdiction over the entire lawsuit. Under Rule 12(b)(1), the District Court was required to sever or strike any non-jurisdictional prayer for relief while retaining mandatory federal question jurisdiction under 28 U.S.C. Section 1331 over all independent constitutional claims for declaratory relief and damages.

## III. CONCLUSION

Because the District Court's dismissal order relies on a fatal internal contradiction—conceding that Appellant alleges "***independent wrongdoing***" and declaring Dkt. 65 as operative, while using Footnote 2 to resurrect superseded pleadings and dismiss independent Section 1983 declaratory and damages claims under *Rooker-Feldman*—the judgment below violates established Supreme Court law (*Exxon Mobil*, *Marshall*, and *Skinner*). By erroneously conflating factual context with legal causation, the District Court invoked a never-sanctioned, discredited reading of the "***inextricably intertwined***" formulation—a concept never intended by *Feldman* to substitute original federal question jurisdiction under 28 U.S.C. § 1331 over independent, out-of-court constitutional torts. This Court should reverse the dismissal and allow Appellant's claims.

## CERTIFICATE OF COMPLIANCE

This document complies with the word limit of Fed. R. App. P. 32(a)(7)(B) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f) (caption, table of contents, table of authorities, signature block, certificate), this document contains approximately 2,243 words.

## CERTIFICATE OF SERVICE

I hereby certify that on October 04, I electronically filed the foregoing document with the Clerk of the Court for the United States Court of Appeals for the First Circuit by using the CM/ECF

system. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system.

I further certify that because the following pro se Appellees are not registered for electronic service by the court, I have served them via electronic mail only per mutual agreement as follows:

**Brian P. Divasta**

brian.divasta@gmail.com

**Carolyn P. Gannon**

carolyn.patricia0108@gmail.com

I further certify that because the following pro se Appellees are not registered for electronic service by the court, I have served them via regular mail:

**Anne S. Yas**

Norfolk District Attorney's Office

45 Shawmut Road

Canton, MA 02021

anne.yas@mass.gov

**Danielle Czekanski (Simmer)**

5034 N. 81st Street

Scottsdale, AZ 85250

/s/ Yaroslav Kyrpych

Plaintiff-Appellant Pro Se

Date: October 04, 2026